2007 UT 73

**Ronald Watson LAFFERTY,**
**Plaintiff and Appellant,**

v.

**STATE of Utah, Defendant and Appellee.**

No. 20060201.

Supreme Court of Utah.

Sept. 14, 2007.

Rehearing Denied Jan. 4, 2008.

Grant W.P. Morrison, William Patrick Morrison, Salt Lake City, Aric Cramer, Bountiful, for plaintiff.

Mark L. Shurtleff, Att'y Gen., Thomas B. Brunker, Christopher D. Ballard, Asst. Att'ys Gen., Salt Lake City, for defendant.

PARRISH, Justice.

## INTRODUCTION

¶ 1 Plaintiff Ron Lafferty appeals the district court's entry of summary judgment in favor of the State on his claims for post-conviction relief. We affirm, holding that Lafferty failed to advance facts showing a genuine issue for trial.

## BACKGROUND

¶ 2 On July 24, 1984, Ron Lafferty ("Lafferty") and his brother Dan Lafferty ("Dan") forcibly entered the home of their sister-in-law Brenda Lafferty. *State v. Lafferty (Lafferty III)*, 2001 UT 19, ¶ 13, 20 P.3d 342. Both brothers beat Brenda severely, and one of them slit her throat.[1] *Id.*; *State v. Lafferty (Lafferty I)*, 749 P.2d 1239, 1241 (Utah 1988). Dan then killed Brenda's fifteen-month-old baby, Erica, by slitting her throat. *Lafferty I*, 749 P.2d at 1241. Both brothers emerged from Brenda's home covered with blood and drove to Chloe Low's home, intending to murder her. *Lafferty III*, 2001 UT 19, ¶¶ 13–14, 20 P.3d 342. They broke into her home, but found her away. *Id.* ¶ 14. Upon leaving Low's home, they discussed murdering Richard Stowe, the man who had presided over Lafferty's excommunication proceedings from The Church of Jesus Christ of Latter-day Saints, and started to drive toward his home. *Id.* ¶¶ 9, 14. After missing the turn-off, however, they abandoned their plan. *Id.* ¶ 15.

¶ 3 The impetus for these gruesome acts was Lafferty's claim that he had received a divine revelation commanding that these four individuals be "removed." *Id.* ¶ 8 & n. 4. Lafferty crashed to the nadir of delusion and murder from his well-respected position as an ecclesiastical and civic leader in the course of approximately three years. *Id.* ¶¶ 3–13.

¶ 4 On May 7, 1985, Lafferty was convicted of two counts of first degree murder, two counts of aggravated burglary, and two counts of conspiracy to commit first degree murder. *Id.* ¶ 21. He was sentenced to death for the murder convictions. *Lafferty I*, 749 P.2d at 1242. This court affirmed the convictions on January 11, 1988. *Id.* at 1241. On federal collateral review, however, the Tenth Circuit vacated the convictions and sentence, holding that the state trial judge had evaluated Lafferty's competence under an incorrect standard. *Lafferty v. Cook (Lafferty II)*, 949 F.2d 1546, 1548 (10th Cir. 1991).

¶ 5 On retrial in April 1996, a second jury convicted Lafferty of two counts of first degree murder, aggravated burglary, and conspiracy to commit first degree murder. *Lafferty III*, 2001 UT 19, ¶ 1, 20 P.3d 342. He was again sentenced to death for the murder convictions. *Id.* We affirmed these convictions in February 2001. *Id.* ¶ 151. The United States Supreme Court denied Lafferty's petition for a writ of certiorari on November 13, 2001. *Lafferty v. Utah*, 534 U.S. 1018, 122 S.Ct. 542 (2001).

¶ 6 Lafferty filed a preliminary petition for post-conviction relief on October 10, 2002. His original post-conviction counsel withdrew because of a conflict of interest in August 2003. Lafferty's current counsel was appointed on November 13, 2003. The post-conviction court approved Lafferty's request for an investigator and a mitigation specialist on February 18, 2004. Lafferty filed a second amended petition for post-conviction relief on October 29, 2004. The first part of the petition consists of a newly discovered evidence claim and forty-seven additional claims. The second part of the petition is a pro se filing. On February 22, 2005, the State moved to dismiss four of Lafferty's claims and moved for summary judgment on the remaining claims. The post-conviction court heard oral argument on these motions on October 6, 2005.

¶ 7 On November 29, 2005, the post-conviction court granted the State's summary judg-

---

1. At Lafferty's trial, Dan testified that he alone slit Brenda's throat. One of the men in the car with Lafferty immediately following the killings, however, testified that Lafferty admitted killing Brenda. *Lafferty III*, 2001 UT 19, ¶ 15, 20 P.3d 342.

ment motion with respect to each of Lafferty's claims. A final order was entered on January 3, 2006. Lafferty appealed the post-conviction court's decision on January 31, 2006, raising thirty-six claims from the first part of his second amended petition. We have jurisdiction pursuant to Utah Code section 78–2–2(3)(i).

## ANALYSIS

¶ 8 Lafferty's numerous post-conviction claims fall into five broad categories. First, he argues that his trial and appellate counsel were ineffective. Second, he argues that the post-conviction court erred in dismissing twenty-five of his claims on the basis that they could have been brought on direct appeal. Specifically, he argues that an ineffective assistance of counsel claim was implied in each of these dismissed claims, thus creating adequate grounds for reviewing them in post-conviction proceedings. Third, he contests the post-conviction court's holding that he failed to establish the necessary facts to justify a trial on his claim that time and money constraints precluded his post-conviction counsel from satisfying the ABA guidelines for representing capital defendants. Fourth, Lafferty argues that an evaluating psychologist's testimony about "situational competence" in a subsequent and unrelated trial constitutes new evidence, entitling him to a new trial. Finally, Lafferty argues that his Sixth Amendment right to counsel was violated because his trial counsel also represented his co-defendant Dan with respect to charges arising from the same criminal episode.

¶ 9 We review the denial of post-conviction relief for correctness, affording no deference to the lower court's legal conclusions. *Taylor v. State (Taylor II)*, 2007 UT 12, ¶ 13, 156 P.3d 739.

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

¶ 10 Lafferty alleges that his trial counsel was ineffective for (1) failing to request that the jury be sequestered, (2) failing to conduct an adequate mitigation investigation, (3) failing to meet the requirements outlined in rule 8 of the Utah Rules of Criminal Procedure and the ABA guidelines for representing capital defendants, and (4) failing to object to the prosecutor's closing argument. Lafferty alleges that his appellate counsel was ineffective for (1) failing to meet the qualifications outlined in rule 8 of the Utah Rules of Criminal Procedure and the ABA guidelines and (2) failing to appeal the trial court's denial of his request for a change of venue.

### A. Ineffective Assistance of Trial Counsel

¶ 11 Implicit in the Sixth Amendment's guarantee of counsel is the right to effective assistance of counsel, *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), because "it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results." *Id.* at 685, 104 S.Ct. 2052. Consequently, there are circumstances where counsel's assistance is so lacking that it undermines the proper functioning of the adversarial process and the reliability of the outcome. *Id.* at 686, 104 S.Ct. 2052. To prove ineffective assistance of counsel, a petitioner must establish (1) "that counsel's performance was deficient," and (2) that "the deficient performance prejudiced the defense." *Id.* at 687, 104 S.Ct. 2052. These prongs may be addressed in either order. *Id.* at 697, 104 S.Ct. 2052.

¶ 12 To establish that counsel was deficient, a petitioner must overcome the strong presumption that counsel rendered constitutionally sufficient assistance, *id.* at 689–90, 104 S.Ct. 2052 by showing that counsel's conduct "fell below an objective standard of reasonableness" under prevailing professional norms, *id.* at 688, 104 S.Ct. 2052. The Supreme Court has rejected the invitation to provide more specific guidelines for determining effective assistance; instead, courts should evaluate whether counsel's assistance was reasonable "considering all the circumstances." *Id.* Professional standards and guidelines can assist in that evaluation but are by no means definitive. *Id.*

¶ 13 To establish that deficient performance prejudiced the defense, a petitioner "must show that there is a reasonable proba-

bility that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. Reasonable probability is defined as "probability sufficient to undermine confidence in the outcome." *Id.* Having outlined the legal requirements for ineffective assistance, we now turn to Lafferty's specific claims.

1. Jury Sequestration

¶ 14 Lafferty argues that, given the high-profile nature of the case, his trial counsel was ineffective for failing to request that the jury be sequestered. Focusing on the fact that one initially sympathetic juror was excused because of outside interference, Lafferty further argues that, had the jury been sequestered, this juror would have remained on the jury and possibly voted against the death penalty. Lafferty relies on this example of outside interference to underscore the likelihood that prejudice resulted from the lack of jury sequestration.

¶ 15 As a matter of law, Lafferty's argument does not meet the showing required under *Strickland.* Lafferty offers no support for his proposition that reasonable counsel "surely" would have moved to sequester the jury in such a "high profile case." Moreover, the fact that an initially sympathetic juror was excused does not establish prejudice. The Constitution guarantees a defendant the right to an impartial jury, U.S. Const. amend. VI; *State v. Wach,* 2001 UT 35, ¶ 36, 24 P.3d 948, not a jury of a particular composition, *Taylor v. Louisiana,* 419 U.S. 522, 538, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975); *State v. Tillman,* 750 P.2d 546, 575 (Utah 1987). The contamination and subsequent dismissal of one potentially sympathetic juror has no effect on the seated jury's impartiality.

¶ 16 We are cognizant of circumstances where pervasive pretrial publicity is considered inherently prejudicial. For example, in *Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961), pretrial publicity was so inflammatory that eight of the twelve jurors had determined the defendant guilty prior to the start of trial. *Id.* at 728, 81 S.Ct. 1639. Similarly, in *Rideau v. Louisiana,* 373 U.S.

723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963), where the defendant's taped confession was broadcast by a community television station three times prior to his arraignment, the Supreme Court declined to review the voir dire transcripts for evidence of prejudice, holding that actual prejudice was inherent in the proceeding. *Id.* at 723, 727, 83 S.Ct. 1417. In a subsequent decision, the Court described the *Rideau* trial as a " 'hollow formality,' " while the "real trial had occurred when tens of thousands of people, in a community of 150,000, had seen and heard the defendant admit his guilt before the cameras." *Murphy v. Florida,* 421 U.S. 794, 799, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975) (quoting *Rideau,* 373 U.S. at 726, 83 S.Ct. 1417). Similarly, extreme in-trial media coverage can deprive a court proceeding of the "solemnity and sobriety to which a defendant is entitled in a system that subscribes to any notion of fairness and rejects the verdict of a mob." *Murphy,* 421 U.S. at 799, 95 S.Ct. 2031.

¶ 17 The circumstances forming the basis of such egregious, inherent prejudice, however, cannot be so broadly interpreted as to stand for the proposition that "juror exposure to information about a state defendant's prior convictions or to news accounts of the crime with which he is charged alone presumptively deprives the defendant of due process." *Id.* Neither Lafferty's bare allegation of prejudice nor the record suggests the kind of media circus that would create an inherently unfair trial.

¶ 18 Absent such extreme circumstances, a petitioner seeking to establish prejudice must show that the jury was subject to "actual exposure to the potentially prejudicial matter [with] an actual prejudicial effect." *State v. Clark,* 675 P.2d 557, 560 (Utah 1983). It is logical that this burden falls on the petitioner given the presumption of jury impartiality and the discretion afforded the trial court in determining whether to sequester the jury. *See, e.g., United States v. McVeigh,* 119 F.3d 806, 815 (10th Cir.1997) (finding that the trial court did not abuse its discretion in refusing to sequester the jury for the lengthy trial of the Oklahoma City bomber).

¶ 19 We rejected a claim similar to Lafferty's in *Codianna v. Morris*, 660 P.2d 1101 (Utah 1983). In that case, we found no prejudice or deficiency because the media coverage did not create the " 'carnival atmosphere' " indicative of actual prejudice and because " 'pretrial publicity—even pervasive, adverse publicity—does not inevitably lead to an unfair trial.' " *Id.* at 1111 (quoting *Sheppard v. Maxwell*, 384 U.S. 333, 358, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 554, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976)). Consequently, we found that counsel was not ineffective for failing to demand that the jury be sequestered. *Codianna*, 660 P.2d at 1112.

¶ 20 Similarly, in this case, Lafferty failed to provide any evidence showing that the publicity surrounding the trial created prejudice. In fact, there is a complete lack of any evidence reflecting the extensiveness of the pretrial media coverage of the murders or possible prejudice among the potential jury pool. Nor are there record citations to the voir dire transcripts indicating possible prejudice among the jurors who were actually seated. Because of Lafferty's abject failure to meet his evidentiary burden, we affirm the trial court's ruling that Lafferty's counsel was not ineffective in failing to request jury sequestration.

## 2. Death Qualification of the Jury

¶ 21 Lafferty next argues that his trial counsel rendered ineffective assistance by failing to object to the death qualification of the jury. Death qualification refers to the practice of excluding from the jury venire those jurors who would not vote for the death penalty under any circumstances. *Lafferty I*, 749 P.2d at 1253; *State v. Alvarez*, 872 P.2d 450, 454 (Utah 1994) (quoting Utah R.Crim. P. 18(e)(10)). Lafferty suggests that his counsel's failure to object resulted in the denial of his right to an impartial jury.

¶ 22 Lafferty's argument is without factual basis. On June 30, 1994, prior to Lafferty's second trial, his trial counsel, Michael Esplin, moved to preclude the death qualification of the jury venire, arguing that it was unconstitutional. The motion was denied on September 12, 1995. Because this claim was raised and rejected by the trial court, it is not an appropriate basis for relief under the Post–Conviction Remedies Act ("PCRA"). Utah Code Ann. § 78–35a–106(1)(b).

¶ 23 In addition to this procedural bar, we also object to the way this argument was raised. In his post-conviction petition, Lafferty initially alleged that the death qualification of the jury was unconstitutional. However, when faced with the PCRA's procedural bar in the context of the State's motion for summary judgment, Lafferty recast the claim into an ineffective assistance of counsel claim in his memorandum opposing summary judgment. He has repeated this characterization in his briefs to this court. Raising an issue for the first time in a memorandum opposing summary judgment without showing good cause violates the pleading requirements for post-conviction petitions, Utah R. Civ. P. 65C(c), and transforming a claim into a new legal animal on appeal violates our preservation requirements, *State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346.

¶ 24 Moreover, if we were to suspend the strictures of the facts, the PCRA, and our procedural rules, Lafferty's claim would still fail. Effective assistance requires only that counsel identify and apply existing law. *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight ... and to evaluate the conduct from counsel's perspective at the time."). At the time of Lafferty's second trial, both the United States Supreme Court and this court had held that death qualifying a jury did not violate a defendant's Sixth Amendment right to an impartial jury. *See Lockhart v. McCree*, 476 U.S. 162, 177–78, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986) (rejecting the view that "excluding prospective jurors with a particular viewpoint" creates "an impermissibly partial jury" and affirming the view that "an impartial *jury* consists of nothing more than 'jurors who will conscientiously apply the law and find the facts.' " (quoting *Wainwright v. Witt*, 469 U.S. 412, 423, 105 S.Ct. 844, 83

L.Ed.2d 841 (1985))); *State v. Alvarez,* 872 P.2d 450, 454–55 (Utah 1994) (holding that death qualification of juries does not violate the Utah Constitution); *Lafferty I,* 749 P.2d 1239, 1253 (Utah 1988) (noting that under *Lockhart* "the United States Supreme Court has reaffirmed the constitutionality of death-qualifying juries in capital cases"). In fact, Lafferty had raised and lost a constitutional claim challenging the death qualification process on his first appeal. *Lafferty I,* 749 P.2d at 1253. Therefore, counsel was not obligated to reassert the claim in order to be effective.

3. Mitigation Investigation

¶ 25 Lafferty next argues that his trial counsel was ineffective for failing to conduct an adequate mitigation investigation. Specifically, he argues that trial counsel failed to hire effective investigators to re-interview witnesses, discover evidence tampering, and find exculpatory evidence; failed to hire a mitigation expert for the penalty phase of the trial; and failed to present determinative mitigation evidence. He asserts that these alleged deficiencies limited the presentation of critical mitigation evidence that would have likely resulted in his receiving a lesser punishment. We affirm the district court's grant of summary judgment to the State on these claims.

¶ 26 Trial counsel is constitutionally required to conduct an adequate mitigation investigation. *State v. Taylor (Taylor I),* 947 P.2d 681, 686–87 (Utah 1997). As are all assessments of counsel's effectiveness, the adequacy of this investigation is judged by a standard of reasonableness. *Wiggins v. Smith,* 539 U.S. 510, 533, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) ("A decision not to investigate thus must be directly assessed for reasonableness in all the circumstances." (internal quotation marks omitted)); *Strickland,* 466 U.S. at 691, 104 S.Ct. 2052 ("[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."). We presume that counsel acted reasonably absent evidence to the contrary. *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052.

¶ 27 Consequently, in order to show the inadequacy of counsel's mitigation investigation, Lafferty has the burden of identifying "acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052; *see also Taylor I,* 947 P.2d at 687 ("Failure to investigate mitigating factors can constitute ineffective assistance of counsel only where such factors actually exist and may be productively used in the penalty phase.").

¶ 28 Lafferty bears this burden under our procedural rules as well. *See* Utah R. Civ. P. 65C(c)(3), (d)(1) (requiring the petitioner to set forth "in plain and concise terms, all of the facts that form the basis of [his] claim to relief" including "affidavits, copies of records and other evidence in support of the allegations"). Lafferty has failed to show how counsel was deficient in his investigation and how that deficiency created prejudice. In short, Lafferty presented no proof of evidence tampering or undiscovered exculpatory evidence that would have resulted from a more extensive mitigation investigation.

¶ 29 Lafferty's claim that trial counsel failed to present material mitigation evidence is also without basis. Lafferty focuses on the mitigation evidence presented in the penalty phase of the trial—namely, yearbook pictures, family photographs, and testimony from prison officials that Lafferty was a "relatively trouble-free inmate"—without considering the extensive mitigation evidence that was presented during the guilt phase of the trial. Lafferty asserts that his trial counsel was ineffective for failing to introduce during the penalty phase of the trial his educational records, mental health records, psychological testing results, National Guard honorable discharge, Utah County Jail and Department of Corrections records, journal entries, and witness accounts of his background of abuse.

¶ 30 The premise for Lafferty's argument is his assertion that evidence presented in the guilt portion of a capital case must be reintroduced in the penalty phase. But we rejected this premise in *Lafferty III,* where we explicitly stated that "just as aggravating factors from the guilt phase of the

trial may be considered at the penalty phase, so may any mitigating evidence or factors presented in the case-in-chief." 2001 UT 19, ¶ 127, 20 P.3d 342. Indeed, the implication that all mitigating evidence must be presented twice is illogical given the statutorily imposed procedure in a death-eligible case where the guilt and sentencing phases of the trial are heard by the same jury. *See* Utah Code Ann. § 76–3–207(1)(c)(i) (2003).

¶ 31 The mitigation defense presented by Lafferty's trial counsel during the guilt phase was extensive and included the very evidence that Lafferty complains was not presented during the penalty phase. Trial counsel presented testimony from Lafferty's brothers and evaluating psychologists and psychiatrists about Lafferty's childhood, including evidence of physical, verbal, and emotional abuse within his childhood home. Trial counsel also presented evidence of his mental health history and testimony interpreting his psychological test results and analyzing his competence; testimony about his school performance; the volume of Lafferty's journal that post-conviction counsel's mitigation expert found particularly relevant; character witness testimony, including assessments that Lafferty was a good neighbor and strong member of the community; and evidence of his brother Dan's undue influence over him. During the penalty phase, counsel presented his records from the Utah County Jail and Utah Department of Corrections. While Lafferty's trial counsel did not present evidence of Lafferty's National Guard service, Lafferty has failed to articulate how this evidence is material. In fact, the mitigation expert hired by post-conviction counsel conceded that Lafferty's National Guard service is "rather unremarkable as part of [his] social history." In sum, Lafferty points to no relevant mitigating evidence that trial counsel should have, but did not, investigate and present.

4. Rule 8 and the ABA Guidelines

▪ ¶ 32 Lafferty also claims ineffective assistance of counsel because his trial counsel did not meet the qualifications for representing capital defendants contained in rule 8 of the Utah Rules of Criminal Procedure and in the ABA guidelines. The district court granted summary judgment to the State on these claims because Lafferty has no constitutional right to counsel with these specific qualifications. In response, Lafferty argues that the lack of qualification is "the epitome of ineffectiveness of counsel." In essence, Lafferty invites us to abandon the two-pronged *Strickland* analysis and adopt a per se rule under which counsel's failure to meet the rule 8 or ABA requirements equates to ineffective assistance of counsel. We decline the invitation.

¶ 33 The qualifications outlined in rule 8 constitute our attempt to decrease the likelihood that capital defendants will receive representation from inexperienced attorneys; however, compliance with these requirements is not constitutionally mandated. Rule 8 requires proficiency from counsel appointed in capital cases, Utah R.Crim. P. 8(b), 8(d), but it also explicitly precludes basing an ineffective assistance claim solely on counsel's failure to meet the requirements of rule 8, *id.* at 8(f) ("Mere noncompliance with this rule or failure to follow the guidelines set forth in this rule shall not of itself be grounds for establishing that appointed counsel ineffectively represented the defendant at trial or on appeal."). While our rule 8 requirements may be used as a tool to illustrate the margin between counsel's performance and professional competence, without more, their violation does not establish deficiency.

¶ 34 With regard to the ABA guidelines, courts frequently use these guidelines to determine the relevant professional norms under the first prong of the *Strickland* analysis, *see, e.g., Rompilla v. Beard,* 545 U.S. 374, 387, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005); *Menzies v. Galetka,* 2006 UT 81, ¶ 90, 150 P.3d 480. They do not, however, establish a rigid checklist or set of rules that counsel must satisfy in order to provide effective representation, *see Strickland,* 466 U.S. at 688–89, 104 S.Ct. 2052.

¶ 35 Lafferty fails to proffer evidence establishing how his counsel's performance was constitutionally deficient and how that deficient performance prejudiced him. In the absence of such a showing, Lafferty's mere assertion that his trial counsel failed to meet

the requirements of rule 8 and the ABA guidelines does not support a finding of ineffective assistance.

### 5. Prosecutorial Misconduct

¶ 36 Lafferty argues that trial counsel was ineffective for failing to object to the prosecutor's statement in his closing argument that punishment for the murder of a fifteen-month-old baby should be greater than the punishment for murdering an adult. The prosecutor stated, "[I]f you determine that the defendant deserves life without parole before we even consider [the child victim] lying dead in her crib, before we ever consider that the second person he killed was a 15-month-old infant, then there's only one punishment left that is meaningful, and that is death." *Lafferty III,* 2001 UT 19, ¶ 91, 20 P.3d 342.

¶ 37 On direct appeal, Lafferty challenged this statement as unconstitutionally prejudicial. *Id.* ¶ 89. He modified the claim in his post-conviction petition, however, presumably in an attempt to avoid the procedural bar against consideration of arguments previously raised. Specifically, Lafferty argues that trial counsel's failure to contemporaneously object to the statement put the issue in a more burdensome procedural posture, requiring a showing of plain error. Thus, in addition to proving the substantive requirements of prosecutorial misconduct, appellate counsel was required to prove that the prosecutor's statements were "obviously improper." *State v. Emmett,* 839 P.2d 781, 785 (Utah 1992). Lafferty claims that absent this high standard, his challenge to the prosecutor's allegedly prejudicial comment could have created grounds for reversal.

¶ 38 We specifically held in *Lafferty III,* however, that the statements were neither prejudicial nor inflammatory, 2001 UT 19, ¶¶ 91–93, 20 P.3d 342, and Lafferty has failed to present us with a reason for reconsidering that holding. Consequently, we find neither

ineffectiveness nor misconduct in trial counsel's failure to contemporaneously object to the prosecutor's closing argument, and we affirm the trial court's entry of summary judgment in favor of the State on this claim.

### B. Ineffective Assistance of Appellate Counsel

¶ 39 The Due Process Clause of the Fourteenth Amendment ensures criminal defendants a right to effective assistance of appellate counsel. *Bruner v. Carver,* 920 P.2d 1153, 1157 (Utah 1996). As is the case in challenges to the effectiveness of trial counsel, to prevail on a claim of ineffective assistance of appellate counsel, a petitioner must prove that appellate counsel's representation "fell below an objective standard of reasonable conduct and that the deficient performance prejudiced [him]." *Id.* For a petitioner to prove that counsel was ineffective for omitting a claim, he must show that the "issue [was] obvious from the trial record and ... probably would have resulted in reversal on appeal." *Taylor v. State (Taylor II),* 2007 UT 12, ¶ 16.[2]

### 1. Rule 8 and the ABA Guidelines

¶ 40 Lafferty first contends that his appellate counsel was ineffective because of his failure to meet the qualification requirements of rule 8 of the Utah Rules of Criminal Procedure and the ABA guidelines. We quickly dispense with this claim. As was the case with Lafferty's identical charge against trial counsel, Lafferty's claim that his appellate counsel's failure to comply with these standards fails as a matter of law to prove the deficiency of counsel. *See supra* ¶¶ 32–35.

### 2. Change of Venue

¶ 41 Lafferty next contends that appellate counsel was ineffective for failing to appeal the denial of his request for a change

---

2. We previously have described the omission of a "dead-bang winner" argument as a circumstance that would warrant a finding of ineffective assistance of appellate counsel. *See Carter v. Galetka,* 2001 UT 96, ¶ 48, 44 P.3d 626; *Taylor II,* 2007 UT 12, ¶ 16, 156 P.3d 739. While this type of omission remains an accurate example of ineffec-

tive assistance of appellate counsel, we are reluctant to repeat the "dead-bang winner" language here because of the possibility that it may be viewed as the standard for relief, rather than as an example of a circumstance when relief would be warranted. If such a mistake were made, it would overstate the petitioner's burden.

of venue. We are unpersuaded by this claim, concluding that the legal basis for his analysis is misplaced and his assertions are unsupported.

¶ 42 When a change of venue decision is challenged on appeal following a jury verdict, the determinative question is "'whether [the] defendant was ultimately tried by a fair and impartial jury.'"[3] *State v. Stubbs*, 2005 UT 65, ¶ 10, 123 P.3d 407 (quoting *State v. Widdison*, 2001 UT 60, ¶ 38, 28 P.3d 1278). The standard for review is abuse of discretion. *Widdison*, 2001 UT 60, ¶ 38, 28 P.3d 1278. In *Stubbs*, for example, we relied on the juror's actual voir dire answers to conclude that the jury pool was so tainted that the trial court probably could not impanel an impartial jury. 2005 UT 65, ¶ 18, 123 P.3d 407. Here, however, Lafferty points to no evidence of a tainted jury.

¶ 43 Without evidence of prejudice, Lafferty cannot show that counsel was deficient for overlooking an obvious argument that probably would have resulted in reversal on appeal. In fact, on his first appeal, Lafferty's counsel, the same counsel who represented him on his second direct appeal, did challenge the denial of his motion to change venue. *Lafferty I*, 749 P.2d at 1250. This court rejected that challenge because the totality of the circumstances provided no basis for concluding that the trial court should distrust the jurors' assurances of impartiality. *Id.* at 1250–51. And Lafferty provides

no reason why counsel was deficient for failing to again pursue this unsuccessful claim on his second appeal. We therefore affirm the trial court, finding no deficiency in counsel's failure to appeal the trial court's denial of Lafferty's motion to change venue.

## II. CLAIMS BARRED UNDER THE PCRA BECAUSE THEY WERE NOT RAISED ON DIRECT APPEAL

¶ 44 The PCRA affords a convicted defendant the opportunity to have his conviction and sentence vacated or modified under certain circumstances. Utah Code Ann. §§ 78–35a–102, –104(1) (2002). A petition for post-conviction relief is a collateral attack on a conviction and sentence available only after a defendant has exhausted all other legal remedies. *Id.* § 78–35a–102(1); *see Taylor v. State (Taylor II)*, 2007 UT 12, ¶ 14, 156 P.3d 739. Claims that were brought on direct appeal are ineligible for consideration in post-conviction actions. Utah Code Ann. § 78–35a–106(1)(b) (2002); *see also Gardner v. Holden*, 888 P.2d 608, 613 (Utah 1994). Similarly, a claim that could have been brought on direct appeal may not be reviewed unless the defendant's failure to bring the claim was the result of ineffective assistance of counsel. Utah Code Ann. § 78–35a–106(1)(c), (2) (2002).

¶ 45 The post-conviction court found that Lafferty could have raised twenty-five of his post-conviction relief claims[4] on direct ap-

---

**3.** The question differs when a denial of a motion for a change of venue is reviewed on interlocutory appeal. For example, in *State v. James*, 767 P.2d 549 (Utah 1989), we articulated different factors for consideration because the procedural posture of the case allowed for the possible avoidance of prejudice, rather than just the possibility for vacating its consequences. While the *James* factors "can be helpful to a trial court assessing the overall fairness of the jury pool," they are not determinative. *State v. Stubbs*, 2005 UT 65, ¶ 17, 123 P.3d 407. Lafferty's exclusive reliance on *James*, therefore, is misplaced.

**4.** These claims are as follows: Claim 1 challenges the constitutionality of certain parts of the Utah capital sentencing statute. Claims 2, 3, 15, 16, 18, and 19 challenge the penalty phase instructions and verdict forms. Claim 18 also asserts that jurors were naturally disposed to imposing a death sentence at the penalty phase because they had already found the existence of

at least one aggravating factor at the guilt phase. Claim 5 challenges the process of death qualification during jury selection. Claim 6 challenges the trial court's denial of Lafferty's motion for change of venue. Claim 11 challenges the trial court's decision preventing Lafferty from admitting a number of mitigating circumstances at the penalty phase. Claim 12 challenges the trial court's decision not to sequester the jury. Claim 13 challenges the reasonable doubt instruction given at the guilt and penalty phases of the trial. Claim 17 asserts that insufficient evidence was presented at the penalty phase to support the aggravating factor that the homicide was committed in an especially heinous, atrocious, cruel, or exceptionally depraved manner. Claim 20 addresses the issue that, after the Tenth Circuit Court of Appeals vacated Lafferty's conviction and sentence, he was not arrested on a warrant, but simply transferred from the Utah State Prison to the Utah County Jail. Claim 30 asserts that Lafferty's constitutional rights were violated

peal but did not, thus preventing those claims from being heard in a post-conviction relief proceeding. Lafferty agrees that these claims could have been, but were not, raised on direct appeal. In an attempt to avoid the procedural bar to their consideration, however, he argues that trial counsel's failure to raise these claims illustrates his ineffectiveness, thereby providing an independent basis for collateral review.

¶ 46 Lafferty first characterized these claims as claims for ineffective assistance of appellate counsel in his memorandum opposing summary judgment. We agree with the post-conviction court that this tactic constitutes an impermissible attempt to raise claims not raised in Lafferty's second amended petition for post-conviction relief.

¶ 47 Lafferty's attempt to reconfigure his claims violates our pleading requirements unless good cause is shown. Rule 65C(c) of the Utah Rules of Civil Procedure provides that a "petition shall set forth all claims that the petitioner has in relation to the legality of the conviction or sentence. Additional claims relating to the legality of the conviction or sentence may not be raised in subsequent proceedings except for good cause shown." The good cause provision of rule 65C allows us to consider claims that were not raised in a post-conviction petition when adherence to a procedural rule would come at the price of basic fairness. *Tillman v. State,* 2005 UT 56, ¶ 21, 128 P.3d 1123; *Gardner v. Galetka,* 2007 UT 3, ¶¶ 18–20 & n. 31, 151 P.3d 968. In this instance, however, Lafferty has not shown good cause for failing to raise these claims under the rubric of

when the prosecution argued that Lafferty murdered one and perhaps both of the homicide victims after arguing at Dan's trial that he had committed both murders. Claims 32 and 47 challenge the constitutionality of Utah's aggravated murder statute. Claims 33, 35, 37, and 38 challenge the constitutionality of Utah's death penalty scheme. Claims 34 and 41 challenge the constitutionality of the death penalty. Claim 42 asserts that the cumulative effect of the numerous errors committed during Lafferty's trial violated his rights to due process and a fair trial. Claim 46 challenges the constitutionality of Utah's insanity defense statute and asserts that the trial court improperly relied on the 1995 version of the statute rather than the 1984 version.

ineffective assistance of counsel in his second amended petition. Accordingly, the claims as originally brought remain procedurally barred under the PCRA.[5]

¶ 48 Moreover, even were we to view these claims through the lens of ineffective assistance of appellate counsel, Lafferty is still not entitled to relief. In order to prove ineffective assistance of appellate counsel, Lafferty must show that there is a genuine issue of material fact with respect to whether appellate counsel overlooked an "'issue which is obvious from the trial record and ... which probably would have resulted in reversal on appeal.'" *Carter v. Galetka,* 2001 UT 96, ¶ 48, 44 P.3d 626 (quoting *Banks v. Reynolds,* 54 F.3d 1508, 1515 n. 13 (10th Cir.1995)).

¶ 49 While Lafferty does raise a number of issues that were not raised on direct appeal, he fails to show how appellate counsel's failure to raise them on direct appeal amounted to constitutionally deficient performance. Lafferty assumes that the omission of these claims constitutes "the very kernel of ineffective assistance of counsel: had prior counsel actually provided effective assistance, then these claims *would have been brought on direct appeal.*" These assertions misconstrue the premise of our ineffective assistance of counsel standard. Appellate counsel is not obligated to raise "'every nonfrivolous issue on appeal ... [and may] "winnow out" weaker claims in order to focus effectively on those more likely to prevail.'" *Carter,* 2001 UT 96, ¶ 48, 44 P.3d 626 (quoting *Banks,* 54 F.3d at 1515).

5. In finding these claims procedurally barred, the post-conviction court relied on our civil law rule that "[a] plaintiff cannot amend the complaint by raising novel claims or theories for recovery in a memorandum in opposition to a motion to dismiss or for summary judgment." *Holmes Dev. LLC v. Cook,* 2002 UT 38, ¶ 31, 48 P.3d 895. We decline to adopt this reasoning because Rule 65C of the Utah Rules of Civil Procedure, which governs "proceedings in all petitions for post-conviction relief," allows the petitioning party to raise additional claims in subsequent proceedings for "good cause shown." Utah R. Civ. P. 65C(c).

¶ 50 Because of the presumption of regularity that attaches to final judgments, Lafferty bears the burden of proof in a post-conviction relief action. *Bruner v. Carver*, 920 P.2d 1153, 1155 (Utah 1996). But Lafferty points to no evidence of constitutionally deficient performance in appellate counsel's failure to raise these claims, and we fail to see evidence of any deficiency. The mere repetition of the *Strickland* standard does not create the demonstrable reality of ineffective assistance necessary to overturn a conviction. *See Fernandez v. Cook*, 870 P.2d 870, 877 (Utah 1993).

¶ 51 Further, Lafferty fails to establish prejudice. While he argues that prejudice resulted because these claims were not presented, he makes no attempt to show that the presentation of these claims would have likely resulted in reversal of his conviction.

¶ 52 In sum, we agree with the post-conviction court that these twenty-five claims could have been brought on direct appeal and thus are procedurally barred under the PCRA. And even were we to consider these claims under the guise of ineffective assistance of counsel, they fail as a matter of law.

## III. COMPLIANCE WITH ABA GUIDELINES FOR POST–CONVICTION RELIEF COUNSEL

¶ 53 Lafferty argues that he is entitled to post-conviction relief because time and money constraints prevented his post-conviction counsel from satisfying the ABA guidelines for attorneys representing post-conviction petitioners in capital cases. We agree with the district court that this claim is deficient and that summary judgment is proper on procedural grounds alone.

¶ 54 Rule 65C of the Utah Rules of Civil Procedure requires a petition to set forth "in plain and concise terms, all of the facts that form the basis of the petitioner's claim to relief." Utah R. Civ. P. 65C(c)(3). Rule 65C(d)(1) requires the petitioner to "attach to the petition ... affidavits, copies of records and other evidence in support of the allegations." Lafferty provides no factual support, or even explanation, for why time was too limited to adequately investigate the case and complete the record. Nor does Lafferty provide bills, estimates, or any other evidence to show that funding limitations forced counsel to choose between conducting a mitigation investigation and hiring a private investigator to reconstruct the investigation. In fact, Lafferty even failed to include a copy of the guidelines with his petition to the post-conviction court or in his briefs to us. Because of the deficiency in his pleadings, we agree with the post-conviction court that Lafferty has failed to show that a genuine issue exists with respect to this claim. Consequently, summary judgment was warranted.

¶ 55 Moreover, even had Lafferty properly presented this claim, it does not warrant post-conviction relief as a matter of law.[6] As we discussed in our ineffective assistance of counsel analysis, the ABA guidelines do not constitute the "minimum requirements" for effective defense counsel. *See supra* ¶¶ 32–35. While the United States Supreme Court and this court have considered the ABA guidelines to ascertain whether counsel acted reasonably under the standard for ineffective assistance articulated in *Strickland, see Wiggins v. Smith*, 539 U.S. 510, 524, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003); *Taylor v. State (Taylor II)*, 2007 UT 12, ¶¶ 49–51, 156 P.3d 739, noncompliance with the ABA guidelines is not, by itself, grounds for reversal.

## IV. NEW EVIDENCE REGARDING LAFFERTY'S COMPETENCE

¶ 56 Lafferty next argues that his conviction should be overturned because of

---

**6.** The State argues that Lafferty's claim also fails because there is no constitutional right to effective assistance of counsel in post-conviction proceedings. *Coleman v. Thompson*, 501 U.S. 722, 755, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). While this is true, we decline to rely on this principle as an alternative basis for our holding because the legislature has created a statutory right to post-conviction counsel under Utah Code section 78–35a–202. *Menzies v. Galetka*, 2006 UT 81, ¶¶ 82, 84, 150 P.3d 480. Further, we have yet to resolve whether the Utah Constitution provides a right to effective counsel in a post-conviction proceeding. *Id. Contra Hutchings v. State*, 2003 UT 52, ¶ 20, 84 P.3d 1150. Because Lafferty's claim of ineffective post-conviction counsel is procedurally barred and fails on other grounds, we have no occasion to consider these issues here.

newly discovered evidence. Specifically, he alleges that Dr. Stephen Golding, a forensic psychologist who testified that Lafferty was situationally competent to stand trial, reneged on the theory of situational competence while testifying in a later, unrelated case. The PCRA affords a petitioner relief when "newly discovered material evidence exists that requires the court to vacate the conviction or sentence," subject to several conditions. Utah Code Ann. § 78–35a–104(1)(e) (2002). The statute names four conditions that must be met to vacate a conviction: (1) The evidence must be unknown at the time of trial and undiscoverable "through the exercise of reasonable diligence"; (2) the evidence must "not [be] merely cumulative of evidence" that was known at trial; (3) the evidence must not be "merely impeachment evidence"; and (4) when "viewed with all the other evidence," the evidence must demonstrate that "no reasonable trier of fact could have found the petitioner guilty of the offense or subject to the sentence received." *Id.*

¶ 57 The State moved for summary judgment, arguing that Lafferty failed to satisfy these conditions, and the district court granted the motion. We agree that summary judgment was appropriate because Lafferty failed to provide a transcript of Dr. Golding's new testimony, a transcript of Golding's testimony at the Lafferty trial, a comparison of the two, or an explanation of how the new evidence could have been used. Given Lafferty's inexplicable failure to provide any evidence in support of his claim, it was impossible for the district court to do anything but grant the State's motion. *See* Utah Code Ann. § 78–35a–105 (2002) ("The petitioner has the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief.").

¶ 58 In any event, even assuming that Dr. Golding reneged on his "situational competence" theory, Lafferty's claim that the new evidence entitles him to a new trial nevertheless fails because the alleged newly discovered testimony constituted mere impeachment evidence. Lafferty's competence was highly contested prior to both criminal trials. He received four competency evalua-

tions prior to his first trial. *State v. Lafferty (Lafferty III)*, 2001 UT 19, ¶¶ 20–21, 20 P.3d 342. Prior to his second trial in November 1992, the court found him incompetent as a result of the testimony and evaluation of three mental health professionals. *Id.* ¶ 23. In a competency hearing in February 1994, at which Dr. Golding and Dr. Noel C. Gardner testified, the court found Lafferty competent to stand trial. *Id.* During jury selection, Lafferty's competence was again called into question because of verbal and physical outbursts in the courtroom. *Id.* ¶ 24. All eight experts that had previously examined Lafferty were asked to reevaluate his competence in a March 14, 1996 competency hearing. *Id.* All four experts for the State, including Golding, found Lafferty competent to stand trial. *Id.* ¶ 25. Three experts for the defense found him incompetent, and one expert could not determine competence without further evaluation. *Id.* In view of this evidence, the trial court found Lafferty competent to stand trial. *Id.*

¶ 59 Because Lafferty's competence was contested, we are particularly cognizant of the importance of the reliability of Dr. Golding's competency evaluation. In his 1994 deposition, Golding articulated the idea of situational competence. Golding found "some of the aspects of Mr. Lafferty's interpersonal style that could under certain circumstances in certain situations cause some degree of compromise of … his competency." Golding refrained from diagnosing Lafferty as psychotic or delusional, but determined that in certain legal contexts he could be manipulated because of his degree of "rigidity[,] … obsessionalism, … self focus and extremism, … suspiciousness, … and emotionality." Because of these traits, Golding testified that "[i]f he feels like people are putting him down, if he feels like the system is not dealing with him in a perfectly straight way, he becomes very emotional about it, and I think not to his own best interests." In Golding's view, certain combinations of personality traits can cause a defendant to act against his own best interest in a legal context; Golding referred to this as a kind of "situational competence." Consequently, Golding reasoned that Lafferty had "certain character traits that would require a non-

randomly chosen defense counsel." In part because Lafferty had a good relationship with his counsel, Mr. Esplin, Golding determined that he was competent to proceed with trial.

¶ 60 According to Lafferty, Dr. Golding testified in an unrelated and subsequent Utah criminal case, *State v. Mitchell,* that the defendant in that case "could not be situationally competent and that theory was an inaccurate theory." As previously discussed, Lafferty provided neither documentation supporting this claim nor any specific information about Golding's subsequent testimony. Interpreting Lafferty's claim in a light most favorable to Lafferty, we would assume that Golding disavowed the theory of situational competence to such a degree that if he were to reevaluate Lafferty, situational competence would no longer factor into his determination. Even assuming that posture, however, the newly discovered evidence merely impeaches Golding's credibility. *See Wickham v. Galetka,* 2002 UT 72, ¶ 14, 61 P.3d 978. Moreover, in light of the fact that three other experts had found Lafferty competent to stand trial, the newly discovered evidence does not dictate a different competency determination, let alone a different trial result. Consequently, Golding's subsequent testimony fails to meet two of the four statutory requirements under Utah Code section 78–35a–104(1)(e) for vacating a conviction because of newly discovered evidence. Therefore, the post-conviction court properly rejected his claim.

## V. CONFLICT OF INTEREST

¶ 61 Lafferty finally argues that his trial counsel was laboring under a conflict of interest because of his prior representation of Lafferty's brother and co-defendant Dan. Lafferty asserts that he was not competent to waive his Sixth Amendment right to conflict-free counsel and that the trial court therefore erred in allowing the representation.

¶ 62 The right to counsel includes the right to counsel free from conflicts of interest. *Taylor v. State (Taylor II),* 2007 UT 12, ¶ 123, 156 P.3d 739. To demonstrate that his counsel had a conflict of interest that infringed his constitutional rights, Lafferty must show that " 'an actual conflict of interest adversely affected his lawyer's performance.' " *Id.* (quoting *State v. Taylor (Taylor I),* 947 P.2d 681, 686 (Utah 1997)); *Strickland v. Washington,* 466 U.S. 668, 692, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish an actual conflict, Lafferty must demonstrate that " 'counsel was forced to make choices advancing other interests to the detriment of his client.' " *Taylor II,* 2007 UT 12, ¶ 124, 156 P.3d 739 (quoting *United States v. Alvarez,* 137 F.3d 1249, 1252 (10th Cir.1998)). In cases where an actual detrimental conflict has been established, we will presume prejudice. *Strickland,* 466 U.S. at 692, 104 S.Ct. 2052. As applied here, the relevant question is whether Lafferty's trial counsel was forced by his prior representation of Dan to make choices that advanced Dan's interests to Lafferty's detriment.

¶ 63 Lafferty fails to make this showing. Dan's case was tried eleven years prior to Lafferty's second trial. We held in *Gardner v. Holden,* 888 P.2d 608, 620 (Utah 1994), that when the trial against a co-defendant arising from the same criminal incident has concluded by the time an attorney is appointed to represent a capital murder defendant, no conflict exists in the representation. Thus, the serial representation at issue here is not enough to establish an unconstitutional conflict of interest.

¶ 64 Further, Lafferty proffered no factual support to show that trial counsel made any decisions or relied on any trial strategies that advanced Dan's interests to Lafferty's detriment. In fact, the record suggests that his trial counsel did just the opposite. During Lafferty's retrial, counsel called Dan as a witness and obtained an admission from Dan that he, rather than Lafferty, physically committed both murders. Counsel then relied on Dan's testimony to vigorously argue that Lafferty should not suffer a more severe punishment than Dan, who had not received the death penalty. *State v. Lafferty (Lafferty III),* 2001 UT 19, ¶ 15 n. 8, 20 P.3d 342. If anything, these facts indicate that trial counsel's joint representation was a boon to Lafferty rather than a detriment. We conse-

quently affirm the district court's summary judgment on this claim.

## CONCLUSION

¶ 65 We affirm the post-conviction court, finding that Lafferty failed to raise a genuine issue for trial on each of the claims raised on appeal.

¶ 66 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice DURRANT, and Justice NEHRING concur in Justice PARRISH's opinion.