2005 UT 65

STATE of Utah, Plaintiff and Petitioner,

v.

Parley Parker Pratt STUBBS, Defendant and Respondent.

No. 20040108.

Supreme Court of Utah.

Sept. 30, 2005.

---

Mark L. Shurtleff, Att'y Gen., Kenneth A. Bronston, Asst. Att'y Gen., Salt Lake City, Leo G. Kanell, Beaver, for plaintiff.

Edward K. Brass, Salt Lake City, for defendant.

NEHRING, Justice:

## INTRODUCTION

¶ 1 Parley Parker Pratt Stubbs was accused of rape in the small town of Beaver, Utah. Before the jury was seated for his trial, Mr. Stubbs moved for but was denied a change of venue. He was convicted, and then he appealed. The court of appeals reversed Mr. Stubbs's conviction and remanded for a new trial, directing the trial court to grant Mr. Stubbs's motion for a change of venue.

¶ 2 We are asked to decide which of two tests should be used to evaluate the merits of a motion to change venue made before the jury is seated, but brought to us to review after the defendant's conviction: the *James* test, applicable to pretrial motions brought to us for interlocutory review, *State v. James*, 767 P.2d 549, 551–54 (Utah 1989), or the *Widdison* test, applicable to post-conviction venue appeals, *State v. Widdison*, 2001 UT 60, ¶ 38, 28 P.3d 1278.

¶ 3 We granted certiorari to review the court of appeals's ruling that the trial court abused its discretion by failing to properly apply the evaluative model we set forth in *James*. We affirm, although on alternate grounds. We hold that based on the procedural facts of this case, both tests provide relevant evaluative guidance and may properly be used to assess venue.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 4 Mr. Stubbs was charged with one count of rape and one count of forcible sexual abuse in Beaver, Utah. The alleged victim was a seventeen-year-old woman. Her family members were well-known and well-regarded members of the community: her mother was the Beaver County treasurer, her grandmother had been a schoolteacher and president of the Beaver Education Association, and her grandfather had also been a schoolteacher and coach of the local high school football team. Mr. Stubbs, on the other hand, was not a resident of Beaver. At the time of the alleged rape, he was staying at a local motel while he worked a temporary job pouring concrete.

¶ 5 The other important facts in this case are procedural. Six days before trial, Mr. Stubbs filed a change of venue motion suggesting that because of the young woman's standing in the community, the court would not be able to seat an unbiased jury. The trial court conducted a status conference concerning the motion the day before trial, but with the agreement of counsel, deferred its decision until jury selection began the next day.

¶ 6 During jury selection, Mr. Stubbs renewed his motion and argued that application of the pretrial test for change of venue required by *State v. James*, 767 P.2d 549 (Utah 1989), would mandate a change in venue. The questions and answers exchanged during voir dire indicated that a large number of the potential jurors knew members of the victim's family or had relationships with the prosecution's witnesses. Four of the eight chosen jurors stated that they knew either the victim or the prosecution witnesses.[1] Nevertheless, the trial court denied Mr. Stubbs's motion. The trial court did not reference the venue considerations we set out in *James*, discussed *infra*, but said it would be unreasonable to change venue every time the victim was a prominent member of the community. The trial court reinforced this practical rationale with the opinion that Beaver County juries would not favor locals over outsiders. Mr. Stubbs was convicted of rape, acquitted of forcible sexual abuse, and sentenced to five years to life in prison.

¶ 7 Mr. Stubbs appealed the trial court's denial of his motion to the court of appeals. *State v. Stubbs*, 2004 UT App 3, ¶ 11, 84 P.3d 837. The court of appeals concluded that the trial court erred when it failed to apply the *James* venue test. It reversed Mr. Stubbs's conviction and remanded for a new trial, directing the trial court to grant Mr. Stubbs's change of venue motion. *Id.* at ¶ 23. We granted certiorari to review the decision of the court of appeals.

## STANDARD OF REVIEW

¶ 8 A decision to grant or deny a motion to change venue is within the trial court's sound discretion and will not be disturbed absent a finding that the court exceeded its discretion. *State v. Widdison*, 2001 UT 60, ¶ 38, 28 P.3d 1278. However, on certiorari, we review the court of appeals's conclusions of law for correctness. *State v. Geukgeuzian*, 2004 UT 16, ¶ 7, 86 P.3d 742.

## ANALYSIS

¶ 9 The right to trial by an impartial jury is guaranteed by both the United States Constitution and the Utah Constitution. *See* U.S. Const. amend. VI; Utah Const. art. I, § 12. To protect that right, rule 29(d) of the Utah Rules of Criminal Procedure permits a trial court to change venue if the court believes a fair and impartial trial cannot be had in the jurisdiction where the action is pending.[2] Utah R.Crim. P. 29(d); *State v. Widdi-*

---

1. The final jurors were Thompson, McMullin, Burnette, Barton, Campbell, Dalton, Anderson, and Sherwood. Juror McMullin worked with the victim's grandmother and was a "good friend" of Officer Chambers (a witness for the prosecution). Also, the victim's grandfather coached her son. Juror Dalton worked as a nurse for Dr. Melling, the physician who examined the victim and testified for the prosecution.

Juror Sherwood knew the victim's grandfather and had done business with her mother. Juror Burnette was friends with Officer Chambers and had been hired by the prosecutor but did not end up working for him.

2. Rule 29(d) provides:

   (i) If the prosecution or a defendant in a criminal action believes that a fair and impar-

*son,* 2001 UT 60, ¶ 33, 28 P.3d 1278. The phrase "fair and impartial" has been part of our change of venue rules since at least 1888. *See* 2 Comp. Laws of Utah § 4992 (1888); *State v. James,* 767 P.2d 549, 551 (Utah 1989).

¶ 10 Almost without exception, challenges to denial of venue motions have come to us after a jury has convicted the defendant. In this setting, our analysis has been guided by the straightforward retrospective test of "whether [the] defendant was ultimately tried by a fair and impartial jury." *Widdison,* 2001 UT 60 at ¶ 38, 28 P.3d 1278; *State v. Lafferty,* 749 P.2d 1239, 1250 (Utah 1988) ("The ultimate test of whether a failure to change venue constitutes an abuse of discretion is whether the defendant was tried by a fair and impartial jury."). However, *James* presented us with a unique circumstance: the motion for change of venue was brought to us as an interlocutory appeal, before the trial took place. 767 P.2d at 550. Because the trial had not yet commenced, and the jury had not been impaneled, we could not apply the *Widdison* retrospective assessment of fairness and impartiality. Although it rendered our traditional test unworkable, we welcomed the interlocutory review of a venue challenge because it presented us with "the opportunity to review the denial before any error committed would be prejudicial to [the] defendant."[3] *Id.* at 555.

¶ 11 Due to its unique procedural posture, *James* required that we articulate the considerations that a trial court ought to take into account when assessing the merits of a motion for a change of venue. We isolated four considerations for trial courts to apply in the context of the totality of the circumstances:

"(1) the standing of the victim and the accused in the community; (2) the size of the community; (3) the nature and gravity of the offense; and (4) the nature and extent of publicity." *Id.* at 552. We "conclude[d] that the judge should grant the motion whenever he or she finds a reasonable likelihood that a fair trial cannot be had unless the motion is granted." *Id.*

¶ 12 The implementation of the *James* venue test shifted the focus of appellate review. Rather than evaluating whether the trial court exceeded its discretion using the retrospective "ultimately tried by a fair and impartial jury" test given in *Widdison,* we turned our attention to the trial court's exercise of discretion in applying certain pre-impanelment guidelines. We assessed the facts in *James* using these guidelines and determined that there was a reasonable likelihood that the defendant could not receive a fair and impartial trial. *Id.* at 554. We reversed the trial court's denial of the defendant's motion and returned the case to the trial court for the purpose of changing venue. *Id.* at 557.

¶ 13 We have expressly limited our review under the *James* test to interlocutory appeals, stating that "[o]n appeal from a jury verdict, we do not look to the *James* factors to determine whether the trial court abused its discretion in denying a change of venue." *Widdison,* 2001 UT 60 at ¶ 38, 28 P.3d 1278. Instead, on direct appeal from a conviction, we implement the traditional test of "whether [the] defendant was ultimately tried by a fair and impartial jury." *Id.*

¶ 14 This distinction has a practical explanation. A trial court must evaluate a pretrial

---

tial trial cannot be had in the jurisdiction where the action is pending, either may, by motion, supported by an affidavit setting forth facts, ask to have the trial of the case transferred to another jurisdiction.

(ii) If the court is satisfied that the representations made in the affidavit are true and justify transfer of the case, the court shall enter an order for the removal of the case to the court of another jurisdiction free from the objection and all records pertaining to the case shall be transferred forthwith to the court in the other county. If the court is not satisfied that the representations so made justify transfer of the case, the court shall either enter an order denying the transfer or order a formal hearing

in court to resolve the matter and receive further evidence with respect to the alleged prejudice.

Utah R.Crim. P. 29(d).

**3.** Such a posture is beneficial to the defendant because it enables us to address venue disputes before error is committed. Although most cases have been presented to us following a conviction, we encourage the defendants to raise venue questions on interlocutory appeal. This both ensures fairness at trial and discourages the defendants from abusing the appeals process by waiting until the trial is over to resolve this issue.

motion for change of venue based on demographic, geographic, and cultural evidence unrelated to the identity and potential for bias of an actual jury venire. In a pretrial setting, the trial court should consider the *James* guidelines to assess whether a jury selected from the prospective juror population would be reasonably likely to fall short of the standards for fairness and impartiality to which a defendant is entitled. Such a pretrial venire evaluation contrasts markedly from the *Widdison* circumstance where appellate review occurred after the jury was selected, the trial was completed, and the defendant was convicted. In a post-conviction challenge to venue, the appellate record is not limited to descriptive data about the characteristics of the community in which the trial is to take place and from whose citizens the jury will be culled. Rather, the appellate court is able to review whether the jurors who were ultimately selected were fair and impartial.

¶ 15 The parties here dispute whether the denial of Mr. Stubbs's venue motion should be reviewed under *James* or *Widdison.* The court of appeals concluded that the complex procedural circumstances of Mr. Stubbs's case warranted the application of the *James* factors, distinguishing it from the post-trial appeal presented in *Widdison*:

> Even though Stubbs takes his appeal from a jury verdict, we apply the *James* factors because they were never appropriately considered by the trial court. Further, the court began jury voir dire before even ruling on Stubbs's motion for a change of venue. This is important because, in *Widdison*, the supreme court recognized that "the unique circumstance of the interlocutory appeal [in *James* ] 'afforded us the opportunity to review the denial [of the change of venue motion] before any error committed would be prejudicial to the defendant.' We reversed the order denying the motion to change venue in order to serve judicial economy."

In *Widdison,* the defendant filed a motion to change venue in November 1996. The trial court denied the motion, but allowed Widdison to raise the issue again at trial. Widdison's trial did not begin until April 30, 1998. During the nearly eighteen months that elapsed between the time the court denied Widdison's motion for a change of venue and trial, no interlocutory appeal was taken. By contrast, in this instance, because the trial court did not rule on Stubbs's motion for a change of venue before trial, Stubbs did not have any opportunity to take an interlocutory appeal and thereby "serve judicial economy."

*Stubbs,* 2004 UT App 3 at ¶¶ 20–21, 84 P.3d 837 (citations omitted) (alterations in original). Accordingly, the court of appeals evaluated Mr. Stubbs's case in light of the four *James* guidelines, giving a detailed and well-reasoned analysis of each, and concluded that the trial court exceeded its discretion by not ruling on Mr. Stubbs's motion for a change of venue before trial and by failing to properly apply the *James* test.

¶ 16 The State insists that the court of appeals made the wrong choice when it applied *James* and not *Widdison.* In the State's view, a *James* analysis was improper because the trial was over. We agree with the State that the court of appeals should have considered *Widdison.* *Widdison* is the controlling law in this case because, like *Widdison, Stubbs* presents a post-conviction appeal. It is thus possible for us to assess the composition of the jury as it was actually impaneled to determine whether Mr. Stubbs was ultimately tried by a fair and impartial jury. This was not possible in *James,* but was possible in *Widdison,* and was likewise possible here.

¶ 17 However, the State's position assumes that the tests presented in *James* and *Widdison* are exclusive. They are not. A court need not choose one or the other when assessing the defendant's motion for change of venue. On the contrary, the evaluative criteria established in *James* can, and often should, play a role in assessing the ultimate question asked by *Widdison:* whether the defendant in fact was tried by a fair and impartial jury. The *James* model can be helpful to a trial court assessing overall fairness of the jury pool because a jury may not show any signs of overt bias but might still be tainted by the types of prejudice *James* aims to prevent. On the other

hand, if voir dire yields no evidence of the prejudices targeted by *James*, a *James* inquiry could still be useful to show that, despite the defendant's initial concerns, the jury pool was able to yield a fair and impartial panel. Therefore, we hold that both at trial and on appeal from a jury verdict, courts may use *James* as part of their *Widdison* analysis when determining whether a defendant received a fair and impartial trial.

¶ 18 The court of appeals's opinion in *Stubbs* aptly shows why, even using the more general *Widdison* analysis, a fair and impartial jury was not found, and probably could not have been found, in Beaver County in this case. Questions and answers exchanged during voir dire reinforced Mr. Stubbs's pretrial suspicions that a fair and impartial jury could not be found because the victim had so many contacts within the community. Indeed, as it was eventually composed, the jury was still populated with jurors who personally knew the victim's family or prosecution witnesses, *supra* n. 1. The court of appeals used the criteria set forth in *James* to show that, under the facts of this case, the entire jury pool was so tainted that a fair and impartial jury could not be assembled. *Stubbs*, 2004 UT App 3 at ¶¶ 15–19, 84 P.3d 837. Thus, we conclude that although the court of appeals erred in disregarding *Widdison*, it reached the correct conclusion that Mr. Stubbs did not receive a fair and impartial jury.

¶ 19 Finally, we note that by affirming the court of appeals's decision in this case, we are not commenting on the impartiality of juries generally in small towns across Utah. We have full confidence that juries in small towns are capable of being impartial. Our decision in this case merely reflects our belief that we should err on the side of fairness, and that where there were so many connections between the chosen jurors and the victim's family, fairness can better be ensured in a different venue.

## CONCLUSION

¶ 20 We affirm the court of appeals's decision in this case, but on different grounds than set forth in its opinion. We hold that where a jury has been impaneled, the proper framework for an analysis of impartiality is the question of whether the jury was in fact fair and impartial, as stated in *State v. Widdison*, 2001 UT 60, ¶ 38, 28 P.3d 1278. We also recognize, however, that the model set forth in *State v. James*, 767 P.2d 549 (Utah 1989), may be helpful, and thus may be used in assessing the ultimate impartiality of the jury. We direct the trial court to grant Mr. Stubbs's motion for a change of venue and remand for a new trial.

¶ 21 Chief Justice DURHAM and Justice PARRISH concur in Justice NEHRING's opinion.

DURRANT, Justice, dissenting:

¶ 22 I respectfully dissent. I agree with the majority's conclusion that *State v. Widdison*, 2001 UT 60, 28 P.3d 1278, controls this case because, like *Widdison*, this case is presented to us as a post-conviction appeal, which enables us to "assess the composition of the jury as it was actually impaneled to determine whether [Parley Parker Pratt] Stubbs was ultimately tried by a fair and impartial jury." *Supra* ¶ 16.

¶ 23 I disagree, however, with the majority's conclusion that *State v. James*, 767 P.2d 549 (Utah 1989), also applies to this case. The *James* and *Widdison* tests are distinct in that *James* is predictive. It poses the question of whether a defendant is likely to obtain a fair and impartial jury. *Widdison*, on the other hand, poses the question of whether a defendant was, in fact, tried by a fair and impartial jury.

¶ 24 In *James*, we delineated four factors that an appellate court should examine to determine whether a trial court has abused its discretion in denying a motion for a change of venue: "(1) the standing of the victim and the accused in the community; (2) the size of the community; (3) the nature and gravity of the offense; and (4) the nature and extent of publicity." 767 P.2d at 552. After setting forth those factors, we expressly recognized that *James* was "[u]nlike any of the other cases coming before this Court where the trial court has denied a motion for a change of venue," because it came to us as an interlocutory appeal, before the case had

been tried. *Id.* at 555. We noted that this unique procedural posture provided us with the "opportunity to review the denial before any error committed would be prejudicial." *Id.*

¶ 25 Unlike *James*, in *Widdison*, the question of whether the district court had abused its discretion in denying a motion for a change of venue came to us after the case had "already been tried and decided by a jury." *Widdison*, 2001 UT 60 at ¶ 38, 28 P.3d 1278. Because the "unique circumstance of the interlocutory appeal," *id.*, that existed in *James* did not exist in *Widdison*, we specifically declined to apply the *James* analysis to post-conviction appeals. *See id.* ("On appeal from a jury verdict, we do not look to the James factors to determine whether the trial court abused its discretion in denying a change of venue."). Instead, we determined that the proper post-conviction test was "whether [the] defendant was ultimately tried by a fair and impartial jury." *Id.* Applying that test to the facts, we held that, because the defendant had passed the jury for cause, thereby acknowledging its impartiality, and because the defendant was "unable to point to any specific evidence of impartiality or bias," the trial court properly exercised its discretion in denying the change of venue. *Id.* at ¶ 39.

¶ 26 I can see no principled basis for departing from our conclusion in *Widdison* that the *James* analysis should be applied only when a jury decision has not yet been rendered. If the jury ultimately selected did in fact prove to be fair and impartial, in my view, the *James* factors—the standing of the victim and accused in the community, the size of the community, the nature and gravity of the offense, and nature and extent of the publicity—are irrelevant. In other words, regardless of the nature of the community and the scope of the publicity, if a particular juror was unaware of that publicity or had no connection to the defendant or the prosecutorial witnesses or other connections to the case, those factors would be of no consequence.

¶ 27 The majority suggests, however, that those factors may nevertheless be relevant in assessing the jury that was actually seated. In my view, the *Widdison* test is fully up to the task of determining whether that jury was impartial. It addresses those situations in which a juror was actually affected or may have been influenced by some relationship to a trial participant. It addresses any influence that publicity may have had on a particular juror. It allows a factual inquiry into any factor that could have affected fairness or impartiality.

¶ 28 Moreover, the *Widdison* test may be applied to assess the cumulative effect of contacts involving individual jurors that, standing alone, may not have been problematic. In my opinion, once a jury has been empaneled, a trial has been held, and a verdict has been returned, a court need only inquire as to the influence of publicity or the nature of the community on the jurors actually seated as opposed to making a broader examination of the demographics of the community or the extent of the publicity associated with the case.

¶ 29 In this case, there were multiple jurors with contacts to participants in or relatives of participants in the trial process. These contacts may well have been sufficient to call into question the jury's fairness and impartiality. My review of the record suggests, however, that defense counsel failed to properly object to these jurors. *State v. Johnson*, 774 P.2d 1141, 1144–45 (Utah 1989) (requiring timely and specific objection to properly preserve issue for appellate review); *see State v. Gray*, 851 P.2d 1217, 1223 (Utah Ct.App.1993) (requiring an objection to be stated "in distinct and specific terms" to properly preserve for appellate review a "for cause" challenge to a prospective juror), *cert. denied*, 860 P.2d 943 (Utah 1993).

¶ 30 During the course of voir dire, defense counsel made a "general objection" to the panel before moving for a change of venue. After the district court denied that motion, defense counsel raised no additional objections to the jury in the remainder of the voir dire.[1] I find no suggestion in the record that

---

1. The only other mention of a biased jury occurred after jury selection was complete, after

the court had admonished the jury, and after the court had allowed the jury to recess for lunch.

the judge was unwilling to consider a request to excuse jurors for cause.[2] In each instance where defense counsel registered an objection as to a specific juror, the juror was excused for cause. At the conclusion of voir dire, both counsel passed the jury for cause.

¶ 31 Defendant has pressed no plain error argument on appeal. Both because the *James* test is inapplicable to this case and because Stubbs has failed to properly preserve the issue of jury impartiality for appellate review, I would reverse the court of appeals.

¶ 32 Associate Chief Justice WILKINS concurs in Justice DURRANT's dissenting opinion.

---

In that instance, defense counsel asked the court to clarify whether in denying his motion for a change of venue the court also denied his objection to the panel as a whole on the basis of implied bias. When the court replied that it had intended to deny both the motion and the objection, the defense counsel did not renew his objection.

2. In fact, the district court removed eleven jurors for cause. During the initial voir dire the trial court, sua sponte, removed four prospective jurors for cause. In chambers, the defense counsel made "for cause" challenges to three jurors, whom the court subsequently dismissed. Then, after the court denied the motion for a change of venue, during additional voir dire, the district court removed, sua sponte, four prospective jurors.