2010 UT App 357

**Clint BUTTERFIELD and Heidi Butterfield, individually and on behalf of their minor child, Kylie Butterfield, Plaintiffs and Appellants,**

v.

**SEVIER VALLEY HOSPITAL; and IHC Health Services, Inc., Defendants and Appellees.**

No. 20090122–CA.

Court of Appeals of Utah.

Dec. 16, 2010.

---

Allen K. Young, Provo, for Appellants.

Joann E. Bott, Steven C. Bednar, and David C. Castleberry, Salt Lake City, for Appellees.

Before Judges ORME, THORNE, and VOROS.

## OPINION

VOROS, Judge:

¶ 1 Clint and Heidi Butterfield, individually and on behalf of their daughter Kylie Butterfield (collectively, Plaintiffs), appeal from a

jury verdict in favor of Sevier Valley Hospital (the Hospital) and IHC Health Services, Inc. (collectively, Defendants). Plaintiffs appeal the trial court's denial of their motion to change venue. We affirm.

## BACKGROUND

¶ 2 Heidi Butterfield gave birth to Kylie Butterfield in July 2000 at the Hospital. Upon delivery, Kylie was not breathing on her own and her pulse was low. The doctors and nurses present attempted to revive her. She was eventually flown to Primary Children's Medical Center. She suffered significant, permanent impairment. In November 2002, Plaintiffs sued Defendants in Sevier County. They alleged that Kylie's condition was caused by negligent resuscitation efforts at the Hospital. Defendants countered that Kylie's condition was the result of a stroke or some other cause.

¶ 3 In October 2006, Plaintiffs filed a Motion for Change of Venue. The motion was based on the ground that a fair and impartial jury could not be impaneled in Sevier County due to the county's small population and the Hospital's prominence in the community. The Hospital is the only one in the county and is one of fourteen major employers there. The Hospital is owned and operated by IHC Health Services, Inc. of Salt Lake City. The trial court recognized Plaintiffs' concern about impaneling an impartial jury but, expressing confidence that an impartial jury could be impaneled, denied the motion.

¶ 4 In March 2008, weeks before trial, a pool of 100 potential jurors was drawn. Each potential juror was given a questionnaire eliciting information, such as whether the potential juror knew or had a relationship with any witness or party. Based on these questionnaires, the trial court asked Plaintiffs and Defendants to "identify those potential jurors which [they] ... fe[lt] like [they'd] like to exclude," adding, "I'll take a closer look at those." Plaintiffs identified numerous potential jurors, including four who eventually decided the case. The trial court took the matter under advisement.

The court excused forty of the jurors for cause based on the parties' suggestions and its own review of the questionnaires and reserved the balance of jury selection for trial.

¶ 5 The case was tried in April 2008. Days before trial, Plaintiffs filed a renewed Motion for Change of Venue. Defendants did not file a written response to this motion, and the trial court never ruled on it.[1]

¶ 6 On the first day of trial, fifty-five potential jurors appeared for voir dire. The trial court conducted voir dire by asking the potential jurors general questions regarding their ability to be impartial and any relationships they might have had with parties or witnesses. Counsel questioned individual jurors and challenged jurors for cause. The trial court ruled on those challenges. This process was repeated until the panel was winnowed to nineteen potential jurors. The parties then each exercised four peremptory challenges to reduce the panel to the eight jurors and three alternates who sat.

¶ 7 Plaintiffs challenged for cause four of the final nineteen potential jurors: Jurors 5, 12, 13, and 15. The trial court denied Plaintiffs' challenges to Jurors 5, 12, and 15, but Plaintiffs removed them with peremptory strikes. Plaintiffs challenged Juror 13 for cause and requested individual voir dire to discuss Juror 13's relationship with a defense witness. Apparently satisfied with Juror 13's description of the relationship, Plaintiffs withdrew their challenge to her. Accordingly, by the conclusion of jury selection, none of the eight jurors who actually heard the case were challenged for cause by Plaintiffs at trial.

¶ 8 Following a two-week trial, the jury returned a verdict in favor of Defendants. Plaintiffs filed a motion for new trial alleging various grounds of error, including the trial court's failure to grant a change of venue. The trial court denied that motion and Plaintiffs now appeal.

1. The trial court noted that there were many pending written motions that it did not have time to rule on. Instead, it directed the parties to make oral motions as trial continued to receive rulings on particular motions. Plaintiffs never reasserted their change of venue motion orally.

## ISSUE AND STANDARD OF REVIEW

¶ 9 Plaintiffs contend that the trial court erred by denying their Motion for Change of Venue, which asserted that an impartial jury could not be impaneled in Sevier County. We will not overturn a trial court's ruling on a change-of-venue motion unless the court clearly abused its discretion. *See City of Grantsville v. Redevelopment Agency of Tooele,* 2010 UT 38, ¶ 53, 233 P.3d 461. A trial court abuses its discretion when its "decision [is] beyond the limits of reasonability," *State v. Arguelles,* 2003 UT 1, ¶ 101, 63 P.3d 731 (internal quotation marks omitted), such that "no reasonable [person] would take the view adopted by the trial court." *Id.* (alteration in original) (internal quotation marks omitted).

## ANALYSIS

¶ 10 Plaintiffs contend that an impartial jury could not be impaneled in Sevier County for the reason that "[v]irtually all of the potential jurors have a personal stake in the outcome, because most will need to use Sevier Valley Hospital" for medical care, as it is the only hospital in the county. In addition, Plaintiffs argue that, due to the Hospital's "very prominent presence in a county of less than 20,000 people," two-thirds of the jury pool and "over half the jurors that decided the case had some personal connection to the facility or its trial witnesses."

I. When a Party Challenges Venue on Appeal After Trial, the Determinative Question is Whether the Case Was Tried to an Impartial Jury.

¶ 11 At the outset, the parties disagree on what law controls. Plaintiffs argue that our analysis should be guided by a trio of criminal change-of-venue cases, *State v. James,* 767 P.2d 549 (Utah 1989), *State v. Widdison,* 2001 UT 60, 28 P.3d 1278, and *State v. Stubbs,* 2005 UT 65, 123 P.3d 407. In particular, they urge us to look to the four-part test set forth in *James. See James,* 767 P.2d at 552. That test was devised in the context of a pre-trial venue challenge heard on interlocutory appeal. *See id.* at 550. It thus examines the characteristics of the community from which the jury will be drawn rather than focusing on the jurors actually selected. *See id.* at 551. Defendants assail this approach both because it derives from a criminal case and because, they argue, once the jury has been impaneled, the dispositive question is whether the case was "ultimately tried by a fair and impartial jury," *Widdison,* 2001 UT 60, ¶ 38, 28 P.3d 1278.

■ ¶ 12 We agree with Defendants and hold that where an appellant raises a change-of-venue challenge after the completion of a civil trial, the determinative question is whether the case was tried by a fair and impartial jury. If so, the purpose of the change-of-venue procedure was achieved and, in any event, the appellant can demonstrate no prejudice.

■ ¶ 13 By statute, civil cases are to be "tried in the county in which: (a) the cause of action arises; or (b) any defendant resides at the commencement of the action." Utah Code Ann. § 78B–3–307(1) (2008). However, the trial court may change the place of trial for the purpose of achieving "an impartial trial":

> The court may, on motion, change the place of trial ... when there is reason to believe that an impartial trial cannot be had in the county, city, or precinct designated in the complaint.

*Id.* § 78B–3–309(2). A similar rule applies in criminal cases. The court may change the place of trial to achieve a "fair and impartial trial":

> If the prosecution or a defendant in a criminal action believes that a fair and impartial trial cannot be had in the jurisdiction where the action is pending, either may, by motion, supported by an affidavit setting forth facts, ask to have the trial of the case transferred to another jurisdiction.

Utah R.Crim. P. 29(d)(1). These provisions make clear that the purpose of a change of venue is to achieve a fair and impartial trial. In this context, lack of fairness and impartiality at trial is a function of "a tainted jury." *See Lafferty v. State,* 2007 UT 73, ¶ 42, 175 P.3d 530.

¶ 14 In a criminal case, if a change-of-venue motion is filed before a jury is impaneled, the trial court must undertake a prospective analysis evaluating "demographic, geographic, and cultural evidence unrelated to the identity and potential for bias of an actual jury venire." *Stubbs*, 2005 UT 65, ¶ 14, 123 P.3d 407. Specifically, the court is to consider "(1) the standing of the victim and the accused in the community; (2) the size of the community; (3) the nature and gravity of the offense; and (4) the nature and extent of publicity." *James*, 767 P.2d at 552. On interlocutory appeal, the appellate court will examine the same factors. *See, e.g.*, *Stubbs*, 2005 UT 65, ¶ 13, 123 P.3d 407 ("We have expressly limited our review under the *James* test to interlocutory appeals...."). The purpose of the *James* factors is to predict whether a fair and impartial jury can be selected in a community that has been exposed to publicity about a criminal case.

¶ 15 In contrast, after trial, no prediction is necessary. "[T]he appellate record is not limited to descriptive data about the characteristics of the community in which the trial is to take place and from whose citizens the jury will be culled." *Id.* ¶ 14. After trial, the reviewing court can examine "the juror's actual voir dire answers." *Lafferty*, 2007 UT 73, ¶ 42, 175 P.3d 530. At that stage, the determinative question is no longer whether "a fair and impartial trial cannot be had," *James*, 767 P.2d at 552, but whether the case was in fact "tried by a fair and impartial jury," *Lafferty*, 2007 UT 73, ¶ 42, 175 P.3d 530 (internal quotation marks omitted).

¶ 16 The *James* factors retain some relevance at trial; they "'can be helpful to a *trial court* assessing the overall fairness of the jury pool,'" *id.* ¶ 42 n. 3 (emphasis added) (quoting *Stubbs*, 2005 UT 65, ¶ 17, 123 P.3d 407). For example, they might encourage the trial court to be sensitive to latent bias "of the types ... *James* aims to prevent." *Stubbs*, 2005 UT 65, ¶ 17, 123 P.3d 407. But when the trial court's ruling "is challenged *on appeal* following a jury verdict,

the determinative question is ' "whether [the] defendant was ultimately tried by a fair and impartial jury." '" *Lafferty*, 2007 UT 73, ¶ 42, 175 P.3d 530 (emphasis added) (alteration in original) (quoting *Stubbs*, 2005 UT 65, ¶ 10, 123 P.3d 407 (quoting *State v. Widdison*, 2001 UT 60, ¶ 38, 28 P.3d 1278)).

¶ 17 In the civil realm, our supreme court has not applied the *James* factors even in the pretrial context. We are aware of one reported Utah decision in which an appellate court reviewed the denial of a motion to change venue on interlocutory appeal, *City of Grantsville v. Redevelopment Agency of Tooele City*, 2010 UT 38, 233 P.3d 461. That appeal arose from a dispute between the City of Grantsville and the Town of Stockton, on the one hand, and the City of Tooele and certain of its agencies on the other. *See id.* ¶ 1. The dispute concerned the distribution of $15 million dollars from the sale of property formerly belonging to the Tooele Army Depot. *See id.* ¶¶ 1–3, 5. Grantsville argued that "Tooele City residents make up more than one-half of the total residents of Tooele County" and that because the case involved "the possible redistribution of millions of dollars from Tooele City coffers to other local communities, it [was] unlikely that an impartial jury could be impaneled." *Id.* ¶ 52 (internal quotation marks omitted).

¶ 18 The supreme court rejected Grantsville's claim with little analysis, dismissing Grantsville's concerns as "mere conjecture":

At this point, Grantsville's argument that an impartial jury cannot be impaneled is mere conjecture. The jury in this case will consist of residents from Tooele City, as well as residents from the surrounding community. Additionally, voir dire provides the litigants with the opportunity to weed out potentially biased jurors.

*Id.* ¶ 53.[2] The court did not analyze or even mention the *James* factors, even though it was reviewing an interlocutory order. *See id.* ¶¶ 51–53. If the *James* factors do not apply to a civil case on interlocutory appeal, a

---

**2.** Although not cited by the supreme court, rule 47 of the Utah Rules of Civil Procedure inferentially supports its holding. Under that rule, a juror may be removed for "[p]ecuniary interest on the part of the juror in the result of the action,

or in the main question involved in the action, *except his interest as a member or citizen of a municipal corporation.*" Utah R. Civ. P. 47(f)(5) (emphasis added).

fortiori they do not apply where, as here, the court may review the voir dire responses of the jurors who actually tried the case.

¶ 19 In appeals after civil jury trials, our court has directed its inquiry largely to whether the trial court had "weed[ed] out potentially biased jurors." *Id.* For example, in *Chamblee v. Stocks*, 9 Utah 2d 342, 344 P.2d 980 (1959), the supreme court affirmed the denial of a pretrial motion for change of venue in a post-verdict appeal. *See id.* at 980. The plaintiff sued the county sheriff. *See id.* The plaintiff argued that because the sheriff was an elected official, "a member of one of the oldest families in Moab and Grand County, [and] had many friends in the county, ... it would be impossible to have an impartial trial." *Id.* The supreme court's analysis focused on the jurors who actually sat: "The wisdom of the court's denial here quite clearly was established when the jurors were questioned for cause shortly before they were sworn." *Id.* at 981. Although all the jurors on the panel either knew, or knew of, the defendant, "none evinced any disposition to try the case other than fairly," except two prospective jurors who were removed for cause or by a peremptory challenge. *Id.* The supreme court concluded its analysis as follows: "Plaintiff at the trial challenged only the one juror for cause and on being asked twice by the trial court if any others were to be challenged for cause, stood mute." *Id.*; *see also Estate of Thorley v. Thorley*, 579 P.2d 927, 930 (Utah 1978) ("Trial procedure affords an opportunity to question jurors and determine bias or prejudice for any reason; and the trial does not proceed until an impartial jury is obtained.").

¶ 20 In sum, because the purpose of a change of venue is to protect the parties' right to a fair trial by an impartial jury, once a jury has been impaneled, the determinative question is whether the impaneled jurors were in fact impartial. Accordingly, we hold that when reviewing a post-trial change of venue motion under Utah Code section 78B-3–309(2), the question before us is whether the case was tried by a fair and impartial jury.

## II. This Case Was Tried By An Impartial Jury.

¶ 21 Plaintiffs contend that their case was not tried by a fair and impartial jury, because five of the eight jurors who sat on the case "had personal connections with Defendant[s] and [their] witnesses." " '[A] juror, who through a personal association with a witness or party has developed a relationship of affection, respect, or esteem, cannot be deemed disinterested, indifferent, or impartial.' " *State v. Cox*, 826 P.2d 656, 660 (Utah Ct.App.1992) (quoting *State v. Brooks*, 563 P.2d 799, 802 (Utah 1977)). Thus, the supreme court has held that a juror who describes a party's witness as a "very good friend" cannot be impartial and must be disqualified, *see Brooks*, 563 P.2d at 801, unless the trial court "adequately probe[s][the] juror's potential bias," and receives "sufficient evidence that the juror will act impartially," *see Cox*, 826 P.2d at 660 (second alteration in original) (internal quotation marks omitted). Similarly, in *State v. Stubbs*, 2005 UT 65, 123 P.3d 407, the supreme court noted that a change-of-venue motion should be granted because of the "many connections between the chosen jurors and the victim's family." *Id.* ¶ 19. "Voir dire responses revealing evidence of bias or partiality give rise to a presumption that a potential juror is biased, and the juror must be dismissed unless that presumption is rebutted." *West v. Holley*, 2004 UT 97, ¶ 14, 103 P.3d 708. For instance, a presumption of bias has been raised in civil cases when a prospective juror indicated that her experience of being sued in the past gave her a negative view of plaintiffs, *see id.*, and where the prospective juror stated that she "would be somewhat partial to the" defendant in the case, *Jenkins v. Parrish*, 627 P.2d 533, 535 (Utah 1981), *overruled on other grounds by State v. Baker*, 884 P.2d 1280 (Utah 1994).

### A. Invited Error

¶ 22 Defendants argue that Plaintiffs' appeal must be rejected because they "passed the jury for cause and chose not to challenge any of the jurors who decided this case." Plaintiffs' response is essentially two-fold. First, relying on *Stubbs* and *James*, they

argue that "there can be a bias built into the jury pool that individual for-cause challenges do not address" and thus "there is no requirement that a party challenge[ ] jurors for cause in order to preserve an appeal on a denial of a motion to change venue." Second, while seeming to concede that they "failed to challenge any of the seated jurors for cause during the oral voir dire," Plaintiffs rely on their earlier objections in response to the trial court's preliminary inquiry based on the jury questionnaires two and a half weeks before trial.

¶ 23 Generally, Utah appellate courts will decline to review an alleged error that was invited by the party challenging it on appeal, that is, when "counsel, either by statement or act, affirmatively represented to the [trial] court that he or she had no objection to the [proceedings]." *State v. Hamilton*, 2003 UT 22, ¶ 54, 70 P.3d 111; *accord State v. Pinder*, 2005 UT 15, ¶ 62, 114 P.3d 551; *State v. Geukgeuzian*, 2004 UT 16, ¶ 9, 86 P.3d 742. This doctrine ensures that " 'a party cannot take advantage of an error committed at trial when that party led the trial court into committing the error.' " *Geukgeuzian*, 2004 UT 16, ¶ 9, 86 P.3d 742 (quoting *State v. Anderson*, 929 P.2d 1107, 1109 (Utah 1996)); *accord Pinder*, 2005 UT 15, ¶ 62, 114 P.3d 551; *Hamilton*, 2003 UT 22, ¶ 54, 70 P.3d 111. It also " 'fortifies our long-established policy that the trial court should have the first opportunity to address a claim of error.' " *Hamilton*, 2003 UT 22, ¶ 54, 70 P.3d 111 (quoting *Anderson*, 929 P.2d at 1109).

¶ 24 Although no Utah case has yet applied the invited error doctrine to a change of venue challenge, the supreme court applied the doctrine to a claim of error during voir dire in *State v. Winfield*, 2006 UT 4, 128 P.3d 1171. *See id.* ¶¶ 13–21. There, the court declined to review the defendant's challenges to seven of the eight jurors on the ground that the defendant "affirmatively represented to the trial court that he had no objection to the jury panel." *Id.* ¶ 13. And as noted above, when a party challenges the denial of a motion to change venue in the context of a post-trial appeal, the analysis is essentially the same as a challenge to the impartiality of the jury. Therefore, like the supreme court in *Winfield*, "we find no reason to create a special exemption for such challenges." *Id.* ¶ 17.

¶ 25 Moreover, we are not persuaded by Plaintiffs' argument that community-wide sources of bias are so unique that the ordinary rules of jury selection do not apply. Our supreme court recently rejected a similar argument in *State v. Shipp*, 2005 UT 35, 116 P.3d 317. There, the defendant argued that non-incidental contact between a witness and a juror occurring *pre-trial* should, like non-incidental contact between a witness and a juror occurring *during trial*, be subject to a rebuttable presumption of prejudice; "whether the contact occurs in the parking lot, on the way into court, [or in] the courtroom before or during a recess," *id.* ¶ 13 (alteration in original), the defendant argued, the potential for at least an appearance of impropriety is the same, *see id.* The supreme court rejected the defendant's comparison. The difference between pretrial contacts and mid-trial contacts is "the district court's ability in voir dire to ferret out a prospective juror's prejudice or bias." *Id.* ¶ 17. "Although contact before voir dire may implicate the concerns ... relating to the appearance of impropriety and the possibility of influence over the juror, the voir dire process ... already exists as a means to unearth and assess any possible bias and prejudice in potential jurors." *Id.* ¶ 14 (citations omitted).

¶ 26 The pretrial contact alleged in the case at bar is of a different sort, but no less amenable to the voir dire process. "Voir dire is intended to provide a tool for counsel and the court to carefully and skillfully determine, by inquiry, whether biases and prejudices, latent as well as acknowledged, will interfere with a fair trial if a particular juror serves in it." *State v. Saunders*, 1999 UT 59, ¶ 34, 992 P.2d 951. Accordingly, we see no reason why the sort of bias alleged in this case should be uniquely exempted from the normal rules of jury selection, including the rule that a party who passes the jury for cause has invited any error in the selection of that jury. *See Winfield*, 2006 UT 4, ¶¶ 13–21, 128 P.3d 1171.

¶ 27 With respect to Plaintiffs' second point, our reading of the record convinces us that Plaintiffs did indeed pass the jury for cause. At the point at which the jury pool had been narrowed to nineteen potential jurors—eight to be struck with peremptory strikes, eight to sit as jurors, and three to sit as alternates—the court asked whether counsel passed the jury for cause. Plaintiffs' counsel "pass[ed] the panel for cause" subject to "the objections [they] already made ... which [the court] overruled." Plaintiffs now contend that they were referring to objections made weeks before trial based on the jury questionnaires. However, the court did not "overrule" any of these; they were either granted or deferred until trial. In contrast, objections made by Plaintiffs during voir dire were either granted, denied, or withdrawn. Consequently, the reference to "objections" is most reasonably read to refer only to those interposed during voir dire. Because all panelists to whom Plaintiffs had objected during voir dire were removed with peremptory strikes, Plaintiffs passed for cause the jury that heard the case.

¶ 28 Accordingly, we affirm on the ground that, by passing the jury for cause, Plaintiffs invited any error in the court's denial of their motion for change of venue.

## B. The Jury

¶ 29 Moreover, the record of jury voir dire in this case demonstrates that, in any event, Plaintiffs have not shown that the jurors who decided the case were biased. Plaintiffs identify five of the jurors who sat on the case as having personal connections resulting in bias: Jurors 1, 2, 10, 11, and 13.

¶ 30 We begin by noting that, as in a direct challenge to the impartiality of a juror, Plaintiffs may not premise an appellate claim of jury bias on a juror where Plaintiffs themselves either expressly declined to challenge that juror for cause or withdrew an earlier for-cause challenge to that juror. *See State v. Wach*, 2001 UT 35, ¶¶ 38–40, 24 P.3d 948 (stating that failure to challenge a juror constitutes waiver). Two of the jurors Plaintiffs identify on appeal fall into this category. Despite their concerns on appeal about Juror 10, at trial Plaintiffs preferred to keep Juror 10 on the jury. During voir dire, Plaintiffs' counsel stated, "Well, I won't challenge [Juror 10]. She was a plaintiff apparently. I better not challenge her." In addition, although Plaintiffs originally challenged Juror 13 because of her "familiar[ity]" with a defense witness, they expressly withdrew that challenge. We regard these acts as inviting any possible error in the seating of these jurors. *See Winfield*, 2006 UT 4, ¶ 21, 128 P.3d 1171. Accordingly, Plaintiffs may not base an appellate claim of jury bias on Jurors 10 or 13.

¶ 31 That leaves Jurors 1, 2, and 11. While Plaintiffs point to personal connections between Jurors 1, 2, and 11 on the one hand and Defendants and their witnesses on the other, we conclude that these connections are too attenuated to demonstrate a relationship of affection, respect, or esteem such that they could not remain impartial. *See State v. Cox*, 826 P.2d 656, 660 (Utah Ct.App.1992). Juror 1 was a friend of the son of Gary Beck, who was an employee of one of the defendants and who sat at counsel table throughout trial. Plaintiffs did not request to individually voir dire Juror 1, nor did Plaintiffs challenge him for cause. On the contrary, Plaintiffs appeared relieved that Juror 1 knew Beck's son and not Beck himself, as originally thought following the questionnaire. During voir dire, Plaintiffs' counsel stated, "[Juror 1], on his form he indicated that he knew Gary Beck. ... [H]e looks way too young to know Gary Beck and I wonder maybe if he knows his son or someone. ... When I saw [Juror 1], I thought I was gonna see a fellow that was about Gary Beck's age and so it must be a son. So okay." Juror 1's connection to Gary Beck is weaker than the connections that required reversal in *Stubbs*. In *Stubbs*, the jurors were friends of prosecution witnesses or knew the victim's family. *See Stubbs*, 2005 UT 65, ¶ 18, 123 P.3d 407. Here, Juror 1 is merely a friend of the son of an employee of one of the defendants.

¶ 32 Juror 2 knew Dr. Chappell and nurse Michelle Chappell but, in her words, "not that well." The trial court asked Juror 2 whether her relationship to the Chappells would affect her impartiality, and

she said that it would not. Jurors are not biased merely because they are acquainted with a party or witness. *See State v. Cobb,* 774 P.2d 1123, 1126 (Utah 1989) (considering potential juror's "brief acquaintance" with prosecutor insufficient to exhibit bias); *Chamblee v. Stocks,* 9 Utah 2d 342, 344 P.2d 980, 981 (Utah 1959) (holding that the fact that potential jurors "knew," "knew of," or were "acquainted with" the plaintiff was insufficient to exhibit bias); *cf. State v. Calliham,* 2002 UT 86, ¶ 50, 55 P.3d 573 (finding inference of bias arose from juror's statement that he would have difficulty remaining impartial due to being "close personal friends" with a party's grandparents). Perhaps most importantly, Plaintiffs did not challenge Juror 2 for cause.

■■■ ¶ 33 Juror 11's connection is no stronger. Juror 11 had been Gary Beck's daughter's first grade teacher. After receiving Juror 11's questionnaire, Plaintiffs said, "[Juror 11] is one of those that maybe we could voir dire and find out how close that relationship was and whether that would affect her." Apparently satisfied with her answers during the trial court's subsequent voir dire, Plaintiffs neither requested to individually voir dire Juror 11 nor challenged her for cause.

¶ 34 In determining whether these jurors were fair and impartial, we find it significant that Plaintiffs challenged none of them. This fact alone would preclude a direct appellate challenge to their impartiality. *See State v. King,* 2006 UT 3, ¶¶ 14–20, 131 P.3d 202 (requiring an objection to preserve for appellate review a for-cause challenge to a prospective juror). Nor did Plaintiffs choose to expend any of their peremptory challenges to remove these jurors.[3] Again, this fact would preclude a direct appellate challenge to their impartiality. *See State v. Baker,* 935 P.2d 503, 509 (Utah 1997) (holding that a defendant must use a peremptory

challenge against a juror unsuccessfully challenged for cause to preserve the issue for appeal); *Clatterbuck v. Call,* 2007 UT App 76U, para. 4 n. 1, 2007 WL 701039 (mem.) (noting that *Baker*'s "cure or waive" rule applies in civil cases). We recognize that Plaintiffs are challenging the impartiality of the jury as a whole, including the entire jury pool, and not just one juror. Nevertheless, as stated above, where the jurors who actually sat were impartial, the parties' right to a fair trial—the ultimate purpose of a motion to change venue—has been preserved. Moreover, we review the trial court's ruling for an abuse of discretion. Accordingly, Plaintiffs' burden is to demonstrate that this jury was so biased that no reasonable person would have failed to order a change of venue. *See State v. Arguelles,* 2003 UT 1, ¶ 101, 63 P.3d 731 (stating that a trial court abuses its discretion "if we conclude that no reasonable [person] would take [its] view" (first alteration in original)(internal quotation marks omitted)). We cannot conclude that any reasonable person would have ruled that Plaintiffs could not enjoy a fair trial by an impartial jury in Sevier County based on the characteristics of jurors with whom Plaintiffs expressed little or no dissatisfaction.

¶ 35 Plaintiffs also contend that an impartial jury could not be impaneled in Sevier County "because jurors may think that the outcome of the case would affect their personal health care." Plaintiffs assert that "[j]urors could well worry both about the financial impact of any such judgment on the [H]ospital, as well as how any individual juror would be viewed by doctors and staff at the [H]ospital should they need to use its facilities." In addition, Plaintiffs argue that "[n]o matter how honest a juror attempts to be, it would be difficult to exclude from [the jurors'] considerations the effect of a $15 million judgment against the County's only

---

**3.** Here, the parties were each granted four peremptory challenges. Plaintiffs used three of the peremptory challenges to remove potential jurors on which they had lost challenges for cause (Jurors 5, 12, and 15). However, Plaintiffs used their fourth peremptory challenge on Juror 9. Unlike many potential jurors, Juror 9 did not know anyone involved in the case and stated that

"nothing" would prevent him from being impartial. He also indicated that he was "indifferent" about being a juror. Despite a lack of objective indicia that Juror 9 would make a biased juror, Plaintiffs chose to remove him with a peremptory challenge rather than striking any of the five jurors Plaintiffs now complain were biased.

hospital." As in *City of Grantsville v. Redevelopment Agency of Tooele City*, 2010 UT 38, 233 P.3d 461, these allegations constitute "general apprehensions based upon conjecture," *id.* ¶ 53 (internal quotation marks omitted), and do not demonstrate that the trial court abused its discretion in denying the motion to change venue. Moreover, as noted above, voir dire gave the parties and the court an opportunity to explore any such concerns. In fact, the trial judge specifically asked the panel members whether they would have difficulty going to the Hospital for treatment in the future if they rendered a verdict in Plaintiffs' favor, and whether they would have difficulty entering a large monetary judgment against the Hospital. All jurors who eventually sat answered no.[4] The one juror in the pool who stated in her questionnaire that she may have difficulty being impartial because she or her husband could possibly be a patient at the Hospital was dismissed for cause. And tellingly, even after filing suit, Plaintiffs themselves sought treatment at the Hospital for Kylie.

¶ 36 We conclude that the Plaintiffs received a fair trial. The trial court conducted an extensive jury selection process. The court used a questionnaire and, based on that questionnaire and suggestions from both parties' counsel, removed some potential jurors for cause weeks before trial. At trial, the court conducted a thorough voir dire. And most importantly, Plaintiffs passed the jury for cause. In view of the foregoing, we conclude that the trial court did not abuse its discretion in denying Plaintiffs' motion for change of venue.[5]

## CONCLUSION

¶ 37 At trial Plaintiffs did not challenge for cause any of the jurors who sat on this case and, ultimately, passed the jury for cause. We therefore affirm the trial court's denial of Plaintiffs motion to change venue. Moreover, in any event, Plaintiffs have not shown us that the jurors who sat in this case were biased.

¶ 38 Affirmed.

¶ 39 I CONCUR: WILLIAM A. THORNE JR., Judge.

ORME, Judge (concurring):

¶ 40 I concur in the court's opinion. I write separately only to expand on the point touched upon in the lead opinion's concluding footnote.

¶ 41 It is always problematic for an appellate court to go too far with a point that has not been briefed. *See Bailey v. Bayles*, 2002 UT 58, ¶ 13 n. 3, 52 P.3d 1158 (recognizing that sua sponte consideration of alternate legal theories or grounds by an appellate court raises "concerns regarding timely and adequate notice and [the] opportunity to be heard in a meaningful way"). But it was recognized at oral argument that (1) the Hospital, although listed as a defendant in the caption, is not a legal entity, but a building owned by defendant IHC; (2) IHC is a corporate entity whose principal office is in Salt

---

4. "[A] juror's bare assurance of her own impartiality" is insufficient to rebut an inference of bias if one has arisen. *West v. Holley*, 2004 UT 97, ¶ 14, 103 P.3d 708. However, the mere fact that these panelists resided in the area served by the Hospital did not raise an inference of bias. *Cf. State v. Calliham*, 2002 UT 86, ¶ 50, 55 P.3d 573 (finding inference of bias arose from prospective juror's statement that he believed he could not be impartial because he was "close personal friends" with a party's grandparents); *State v. Wach*, 2001 UT 35, ¶ 29, 24 P.3d 948 (finding inference of bias arose from prospective juror's disclosure that she had been the victim of crime similar to the crime charged).

5. In oral argument the question arose as to whether, having chosen the venue by filing suit in Sevier County, Plaintiffs had forfeited the right

to challenge venue there. Other jurisdictions have held that a motion for change of venue "is not ordinarily granted at the request of the party who chose the forum in the first place." *Grossman v. Schwarz*, 678 F.Supp. 440, 443 (S.D.N.Y. 1988). And it does appear possible, if not likely, that Plaintiffs could have filed suit in a county other than Sevier. *See* Utah Code Ann. § 78B–3–307(1)(b) (2008) ("[A]n action shall be tried in the county in which: ... (b) any defendant resides at the commencement of the action"); *id.* § 78B–3–307(2) ("If the defendant is a corporation, any county in which the corporation has its principal office or a place of business shall be considered the county in which the corporation resides."). However, without the benefit of briefing and relevant factual context, we decline to resolve the issue on this ground.

Lake City; (3) Plaintiffs had the option of bringing their lawsuit in Sevier County, where their cause of action arose, or Salt Lake County, where IHC has its "principal office," *see* Utah Code Ann. § 78B–3–307(2) (2008); and (4) Plaintiffs chose Sevier County as their forum.

¶ 42 As a practical matter, the problems of which Plaintiffs now complain—namely that in a smaller, close-knit community many of the jurors knew many of the local hospital's employees and witnesses—would have been wholly avoided had Plaintiffs instead elected to bring their lawsuit in Salt Lake County. Perhaps Plaintiffs simply missed the fact that they had a choice. Perhaps they realized they had a choice, but for purposes of their own convenience, or to avoid a change-of-venue battle at Defendant's instance, or in hopes of drawing on local sympathy, knowingly opted for the venue where their claim arose rather than the venue where IHC has its principal office.

¶ 43 In my view, it would be an absolutely extraordinary case in which a plaintiff, with the option of filing its action in a county which would essentially ensure it an untainted jury pool, opted instead to file in a county where there obviously would be difficulties in picking an impartial jury, and would nonetheless be entitled to judicial rescue when the predictable difficulties played themselves out. This is not such an absolutely extraordinary case.

¶ 44 I refrain from premising my affirmance vote strictly on this rationale only because I share my colleagues' view that it is ordinarily best to resolve a case on the issues raised and briefed by the parties rather than something that is raised only at oral argument or—worse yet—that is seized upon by the court in the course of post-argument deliberation or research. *See Bailey,* 2002 UT 58, ¶ 13 n. 3, 52 P.3d 1158 (cautioning that the "affirm on any ground" rule is limited and explaining that even though an alternative theory or ground is apparent to the appellate court, to avoid surprise to the parties, "sound and prudent appellate practice and procedure might dictate that the appellate court afford the parties an opportunity to address and argue an alternate legal theo-

ry or ground in supplemental briefs to the court"). Had the parties raised and briefed this issue, however, I am confident it would have provided a much simpler basis on which to premise our affirmance than the more elaborate analysis so ably set forth in the lead opinion.