**2015 UT App 261**

## THE UTAH COURT OF APPEALS

GUNN HILL DAIRY PROPERTIES, LLC, ET AL.,
Plaintiffs and Appellants,

*v.*

LOS ANGELES DEPARTMENT OF WATER AND POWER, ET AL.,
Defendants and Appellees.

Opinion
No. 20140907-CA
Filed October 29, 2015

Fourth District Court, Nephi Department
The Honorable M. James Brady
No. 120600029

Richard D. Burbidge, Jefferson W. Gross, Carolyn J. LeDuc, Don Howarth, Suzelle M. Smith, and Padraic J. Glaspy, Attorneys for Appellants

Michael D. Zimmerman, Linda M. Jones, Clemens A. Landau, Michael L. Larsen, Brandon J. Mark, John M. Fitzpatrick, and Eric D. Nadolink, Attorneys for Appellees

JUDGE JAMES Z. DAVIS authored the lead opinion, in which JUDGES GREGORY K. ORME AND KATE A. TOOMEY concurred. JUDGE GREGORY K. ORME authored a concurring opinion, in which JUDGE KATE A. TOOMEY concurred.

DAVIS, Judge:

¶1 Appellants are current and former owners of dairy farms located in Millard County, Utah (the Dairies).[1] Appellees (IPP)

---

1. The parties on appeal are not limited to those listed in the caption, but also include other parties whose names appear on

(continued…)

own or operate the Intermountain Power Plant. This case comes to us on the Dairies' motion for interlocutory review of the trial court's denial of their motion to change venue. We granted the motion for interlocutory review and we affirm the trial court's ruling.

## BACKGROUND

¶2 This case has a long history, beginning with the Dairies initially filing suit in 2003 in Los Angeles, California. The California court stayed that case on forum non conveniens grounds. *See Luth v. Department of Water & Power of City of Los Angeles*, 2004 WL 1203002, at *1, *6 (Cal. Ct. App. June 2, 2004) (affirming the stay on appeal). The Dairies then filed a complaint in 2005 in the Third District Court, Salt Lake County, Utah. That court granted IPP's motion to transfer the case to the Fourth District Court in Millard County, and the initially assigned judge granted the Dairies' motion to change venue within the Fourth District to adjacent Juab County to avoid potential jury bias in light of the fact that IPP was one of the largest employers in Millard County and the largest taxpayer in that county.

¶3 The case remained in Juab County, aside from an earlier interlocutory detour to this court, *see Gunn Hill Dairy Props., LLC v. Los Angeles Dep't of Water & Power*, 2012 UT App 20, ¶ 2, 269 P.3d 980, and went to trial in September 2013. After several weeks of trial, IPP moved for a mistrial based on a question the Dairies' attorney asked a witness that referenced settlement negotiations. The court denied the motion. A week later, the court held an in camera discussion with one juror (Juror 9) after the court's bailiff described to the court a conversation Juror 9

(…continued)
the notice of appeal or who have otherwise entered appearances in this court.

had with the bailiff. In the in camera discussion with the trial court, Juror 9 indicated that prior to the jury being impaneled, her sister-in-law told her that she favored IPP. Juror 9 also indicated that her mother expressed to her a similar preference for IPP during trial, warning Juror 9 that a verdict against IPP would threaten people's jobs. Additionally, Juror 9 indicated to the trial court that her husband was biased against farmers and had been for some time. However, Juror 9 also explained that she had "no idea" how she would vote on the case and felt "very torn."

¶4 The Dairies orally moved for a mistrial in light of Juror 9's statements, arguing that the pressures placed on Juror 9 indicate that IPP succeeded in its attempt to taint the jury pool when it "assembled all of [its] employees" "immediately prior to trial" "and advised them that, if the [Dairies] were successful in this trial, . . . [the power plant] would be shut down and jobs would be lost." IPP disputed the Dairies' claim that it attempted to taint the jury pool and described its pretrial meeting with its employees as a "perfectly privileged conversation" during which it responded to employees' questions and concerns regarding the lawsuit. Nonetheless, IPP's counsel stated, "[S]ince we moved for a mistrial last week, . . . we cannot oppose [the Dairies'] motion for mistrial, now, without waiving our own motion for mistrial and I affirmatively believe that a mistrial should have been granted last week." The trial court indicated that the motion was seemingly unopposed and that "[t]here seems to be justification for a mistrial, at least in the eyes of the plaintiff there is, for this reason, and in the eyes of the defendant, there is for other reasons." The court then ruled, "Because each side of this case has requested a mistrial and wants to preserve their rights under their claims of mistrial, the Court, really, has no option but to grant the mistrial."

¶5 The Dairies subsequently moved to change venue again, this time from Juab County to Utah County, the northernmost

county in the Fourth District. The trial court initially granted the Dairies' motion to change venue (the First Order) but later vacated its ruling. In the First Order, the court stated, "Based on [the Dairies'] unopposed motion, and the court's own experience and observations of events occurring during the first trial, . . . the court is persuaded that an impartial trial may not be had in Juab County due to IPP's influence in Juab County." The court concluded that its "in camera discussion with [Juror 9] confirm[ed] [the Dairies'] allegation that there is substantial concern among the citizens of Juab County about the potential effect of a ruling against IPP." The trial court later vacated this order after learning that the Dairies had agreed to give IPP more time to file its opposition to the motion to change venue.

¶6     When the trial court revisited the motion, it concluded that the Dairies' arguments in favor of changing venue were based on conjecture rather than evidence and denied the motion (the Denial Order). The court implicitly rejected any connection between Juror 9 and the Dairies' alleged existence of a community-wide bias, stating, "During the trial, inappropriate communications by members of a specific juror's family caused pressure to bear on one juror." Additionally, the court observed that despite the Dairies' claims that IPP's influence in Juab County was pervasive, in "[t]he actual experience of the court and the parties . . . , an impartial jury was impaneled without much difficulty." The Dairies now seek interlocutory review of the Denial Order.


ISSUE AND STANDARD OF REVIEW

¶7     The Dairies challenge the trial court's denial of its motion to change venue. A trial court "may, on motion, change the place of trial . . . when there is reason to believe that an impartial trial cannot be had in the county, city, or precinct designated in the complaint." Utah Code Ann. § 78B-3-309(2) (LexisNexis 2012). We review a trial court's ruling on a motion to change venue for

an abuse of discretion. *City of Grantsville v. Redevelopment Agency of Tooele City*, 2010 UT 38, ¶ 53, 233 P.3d 461.

ANALYSIS

¶8    The Dairies raise several challenges to the Denial Order. First, the Dairies argue that the court's in camera discussion with Juror 9 reveals that the jury was not impartial when it was impaneled and that, accordingly, there is no basis for the court to presume that an impartial jury could be impaneled on retrial. The Dairies also argue that the trial court abused its discretion by applying the wrong legal standard. We address each argument in turn.

I. Jury Impartiality

¶9    The Dairies contend that the trial court abused its discretion in denying the motion to change venue to the extent the court based its ruling on the clearly erroneous factual finding that "an impartial jury was impaneled without much difficulty." The Dairies contend that the trial court's declaration of a mistrial and the court's statements in the First Order contradict this finding and that the court abused its discretion by entering contradictory factual findings.

A.    Grounds for Mistrial

¶10    According to the Dairies, the trial court declared a mistrial based on the Dairies' argument that Juror 9's in camera statements to the trial court revealed that she was not impartial when the jury was impaneled and that as a result, an impartial jury was never impaneled in this case. The Dairies also argue that IPP "did not oppose the motion."

¶11    The trial court's oral ruling indicates that it declared a mistrial "[b]ecause each side of this case ha[d] requested a

mistrial and want[ed] to preserve their rights under their claims of mistrial." As a result, the court declared that it, "really, ha[d] no option but to grant the mistrial." The court clarified in a written ruling related to the Dairies' venue motion that "[t]he initial trial in Juab County ended in a mistrial as a result of jury tampering where one juror was improperly subjected to influence and pressures from [her] family members during the trial and before deliberations."

¶12 Moreover, when the trial court described its in camera discussion with Juror 9 to the parties, the court did not specifically describe Juror 9 as being biased before or during trial. Rather, the court indicated that Juror 9's family engaged in improper communications with her and pressured her to vote in favor of IPP but that Juror 9 had not actually decided how she would vote. Juror 9's statements did not suggest that her family's concerns were related to anything her relatives heard from IPP or IPP employees. This description coincides with the trial court's statement in the Denial Order that "[d]uring the trial, inappropriate communications by members of a specific juror's family caused pressure to bear on one juror." While we agree that the outside pressures put on Juror 9 by members of her family raised legitimate questions about her ability to remain impartial, Juror 9's statements do not necessarily demonstrate that she was biased when the jury was impaneled. Accordingly, we reject the Dairies' argument that the trial court granted a mistrial specifically because an impartial jury was not initially impaneled. The trial court's finding in the Denial Order that an impartial jury was readily impaneled is not contradicted by the court's declaration of a mistrial.

B.     The First Order

¶13 Additionally, the Dairies argue that the trial court abused its discretion when it failed to explain its finding in the Denial Order that an impartial jury was impaneled in light of the court's

contradictory observation in the First Order that "there is substantial concern among the citizens of Juab County about the potential effect of a ruling against IPP." To the extent the Dairies' argument presupposes that the First Order retains any weight or authority despite the fact that the trial court specifically vacated the order, we disagree. A vacated order is a nullity. *See Black's Law Dictionary* 1688 (9th ed. 2009) (defining "vacate" as "[t]o nullify or cancel; make void; invalidate"). And the trial court was under no obligation to enter a subsequent ruling on the Dairies' motion to change venue that mirrored or complemented the First Order after the court vacated that order.[2]

¶14    Moreover, the court did offer an explanation as to why it set aside the First Order. During a subsequent hearing, the court explained that it entered the First Order in accordance with a schedule the court established with the parties by which the parties would submit all of their filings and responses related to the motion to change venue within the first three weeks of December and the court would rule on the motion by the end of the year. The court indicated that it entered the First Order in accordance with the established schedule after IPP failed to file a timely response, believing the motion to be unopposed. The court later learned that the parties had agreed IPP could have more time to respond to the motion. On that basis and in light of the "significant" consequences the ruling would have for the parties, the court decided to vacate the order. The court explained, "I felt that it was more appropriate to give [IPP] the opportunity and [the Dairies] the opportunity to live by the agreements they had than it was necessary for the Court to make a decision by that specific date." The court also explained that its intent was to "completely set aside" the First Order and to consider the motion anew, without any regard to its prior

---

2. The Dairies do not challenge the propriety of the court's decision to vacate the First Order.

evaluation. Thus, contrary to the Dairies' assertion, the court did explain why it set aside the First Order and it also explained why the findings from the First Order were not duplicated in the Denial Order, i.e., because the court entered the Denial Order after both sides presented arguments. The court entered the First Order believing the motion for change of venue was unopposed and entered the Denial Order after having considered memoranda and oral arguments from both sides.

¶15  The trial court otherwise entered sufficient written findings in its Denial Order to substantiate its ruling. The court's finding that an impartial jury was impaneled in the first trial without much difficulty is supported by record evidence that the jury selection process took only one day even though the court set aside two days for the process. Likewise, an eight-person jury and four alternate jurors were impaneled after roughly fifty prospective jurors were screened, even though a 100-person jury pool was initially called. The court distributed to the jury pool questionnaires assembled from questions supplied by both parties, conducted in-chambers voir dire with the attorneys for each side, and allowed each side four preemptory strikes. The court's conclusion that Juror 9 was subject to inappropriate communications and pressure from her family members during the trial is distinct from the conclusion the Dairies would prefer—that Juror 9 was actually biased before or during trial. Indeed, the court concluded that the "evidence falls short of establishing" that Juror 9's experience of social pressures was connected to any attempt by IPP to taint the jury pool by creating a community-wide bias in its favor. Accordingly, the trial court's finding that an impartial jury was impaneled in the first trial is not clearly erroneous, is not contradicted by either the court's oral declaration of a mistrial or the First Order, and is supported by the record evidence.

## II. Legal Standard

¶16 The Dairies next contend that the trial court applied the wrong legal standard in denying their motion to change venue. Specifically, the Dairies argue that "the trial court here relied heavily upon a misapplication of the decision in *City of Grantsville v. Redevelopment Agency of Tooele City*, 2010 UT 38, ¶ 53, 233 P.3d 461." The Dairies contend that *Grantsville* does not apply here because that case involved a pretrial motion to change venue, which requires a court to "undertake a prospective analysis" aimed at predicting "whether a fair and impartial jury can be selected." *See Butterfield v. Sevier Valley Hosp.*, 2010 UT App 357, ¶ 14, 246 P.3d 120. Instead, the Dairies assert, because this case had already proceeded to trial, "no prediction is necessary" and the "determinative question" for the reviewing court is "whether the case was in fact tried by a fair and impartial jury." *See id.* ¶ 15 (citation and internal quotation marks omitted).

¶17 IPP argues that the *Grantsville* standard is proper in this situation because the declaration of a mistrial essentially returned the parties to a pre-trial position. IPP also argues that because the jury never reached a verdict in this case, the analytical framework promoted by the Dairies is not on point.

¶18 We agree that the Dairies' application of a post-trial perspective is not appropriate here, where the first trial did not end in a verdict. However, we also agree that the prospective analysis promoted by IPP cannot occur in a vacuum; the court should consider the realities of the situation, i.e., that it declared a mistrial, in part, because of jury tampering. However, regardless of which standard of review argued by the parties applies to the analysis, the outcome depends on the import of Juror 9's experience, i.e., whether the pressure Juror 9 experienced was indicative of a community-wide bias or was confined to that juror's particular situation. The Dairies'

argument presupposes that Juror 9's bias resulted from a community-wide bias in favor of IPP, and that Juror 9's bias is evidence that the jury was either not impartial when it was impaneled because Juror 9 was biased from the start, or that the jury did not remain impartial during trial because Juror 9 became biased.

¶19    However, the trial court clearly found that the pressure experienced by Juror 9 was confined to that juror and that Juror 9's unique situation did not substantiate the Dairies' allegations that the jury pool was tainted, either by IPP's alleged proactive efforts or by IPP's pervasive influence in the county. The Dairies do not specifically challenge these findings and instead reargue their position on appeal. This is insufficient to demonstrate an abuse of discretion. *See State v. Nielsen*, 2014 UT 10, ¶ 40, 326 P.3d 645 ("[A] party who fails to identify and deal with supportive evidence will never persuade an appellate court to reverse under the deferential standard of review that applies to such issues.").

CONCLUSION

¶20    The trial court did not abuse its discretion in denying the Dairies' motion to change venue. Affirmed.

———————

ORME, Judge (concurring specially):

¶21    Judge Toomey and I join in affirming the trial court's decision—not because we think it was the right decision but because of our deferential standard of review. Skeptics believe that appellate standards of review do not really matter; that appellate judges pay lip service to standards of review but then decide cases as they please without real regard for the applicable standard of review. Our votes in this case demonstrate that standards of review really do matter.

¶22 To explain, were either of us the trial judge, we would have granted the motion for a further change of venue. Our rationale would be that the big decision had already been made—the decision to move the case from the county where the cause of action arose to some other county in the Fourth District. That decision having been made, notwithstanding the opposition of IPP who was anxious to hold on to its home-court advantage, we would be much less fussy about which other county in the Fourth District might be the best destination for the retrial of this case. And we would be persuaded that in moving venue from Millard County to adjacent Juab County, only one county north, it had not been moved far enough from IPP's preferred venue. And IPP's determined opposition to a further move—to a locale that would be closer to its local attorneys' offices and closer to the international airport that serves the many out-of-state experts and attorneys involved in the case—would tend to confirm our assessment.

¶23 We would also not be too quick to conclude that the juror problem in the first trial was a complete fluke. Both of us would consider it entirely possible that the dairy-versus-power-plant controversy would be a much bigger deal in rural Juab County than in the now largely urban Utah County. The drama that has played out in Millard County and in Juab County would be a nonissue in Utah County, maximizing the chances for empaneling an impartial jury and minimizing the chances for yet another mistrial. We are not saying a fair trial in Juab County is impossible—only that a fair trial in Utah County is at least somewhat more likely. And that would be enough for us, given that the difficult decision had already been made, namely, the decision to move the trial from the county where the cause of action arose to some other county.

¶24 But neither of us was the trial judge. And we do not review a trial judge's change of venue decision de novo but only for an abuse of discretion. We readily join our colleague in

concluding that the trial judge did not abuse his discretion in ruling as he did. He considered all the relevant factors. He explained the basis for his decision in some detail. He explained why he reversed himself after his false start was called to his attention. In short, while we think the trial judge made the wrong call, it was, in its essence, a discretionary call—and one that was within the broad range of discretion entrusted to him.

———————