2024 UT App 18

## THE UTAH COURT OF APPEALS

ALEJANDRA DE LA CRUZ,
Appellant,
*v.*
ANGELA EKSTROM,
Appellee.

Opinion
No. 20220702-CA
Filed February 15, 2024

Third District Court, Salt Lake Department
The Honorable Amber M. Mettler
No. 200906776

Eric B. Vogeler, Jeffrey J. Steele, Chase A. Adams,
Justin M. Hosman, and Alyssa J. Wood, Attorneys
for Appellant

Byron G. Martin and Steven M. Edmonds,
Attorneys for Appellee

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGE RYAN D. TENNEY concurred. JUDGE RYAN M.
HARRIS concurred, with opinion.

CHRISTIANSEN FORSTER, Judge:

¶1     In early 2019, Angela Ekstrom was involved in a car accident when she collided with Alejandra De La Cruz, who was injured in the accident. Twenty months later, De La Cruz filed suit against Ekstrom seeking damages related to the accident. In her initial damages claim, De La Cruz sought a total of approximately $11,000, an amount that would cover the costs of her past medical treatment. A week before the close of fact discovery, however, De La Cruz served supplemental disclosures, seeking—for the first time—more than $70,000 in damages for "future special damages." In response, Ekstrom asked the district court to

exclude De La Cruz's supplemental disclosures. The court granted the motion, and found the disclosures untimely, harmful, and undertaken without good cause. De La Cruz now appeals, asserting that the court's exclusion of the evidence of her claim for future special damages was an abuse of discretion. For the reasons discussed, we reject De La Cruz's arguments and affirm the court's ruling.

BACKGROUND

¶2     In February 2019, De La Cruz and Ekstrom were involved in a car accident. Several days later, De La Cruz sought treatment from a chiropractor for her injuries sustained in the accident, but she did not otherwise seek emergency medical care.

¶3     In October 2020, De La Cruz filed suit against Ekstrom, seeking recovery of damages to compensate her for her injuries. In her complaint, De La Cruz requested, among other things, "past, present, and future special damages including medical expenses, consequential damages, lost wages and future care, if applicable." De La Cruz served her initial disclosures in late December 2020, indicating that her entire special damages claim consisted of approximately $11,000 for the costs of medical treatment she had already incurred. During discovery, Ekstrom asked De La Cruz to identify and describe "every category and amount of damages [she was] claiming," together with a computation of damages. De La Cruz's response to this request was to refer Ekstrom "to her initial disclosures and complaint filed in this matter."

¶4     In May 2021, Ekstrom deposed De La Cruz. During the deposition, De La Cruz testified to continued mild shoulder pain. Later that same month, Ekstrom asked the court to order that De La Cruz submit to a medical examination pursuant to rule 35 of the Utah Rules of Civil Procedure, which De La Cruz opposed because at least some of the injuries she had sustained in the

accident had resolved. Specifically, in her opposition to the rule 35 motion, De La Cruz claimed that "[i]t is unclear what a physical examination of a body part that no longer experiences symptoms related to the collision will do to aid [Ekstrom] in her investigation." After hearing arguments on the motion, the district court ordered De La Cruz to submit to the examination. After numerous delays, that examination took place in December 2021, conducted by Ekstrom's retained medical expert. Sometime before January 2022, De La Cruz had hired her own medical expert. That expert later evaluated De La Cruz and provided a report to her at the end of January.

¶5     In early February 2022, Ekstrom produced her rule 35 examination report. Several days later, De La Cruz served Ekstrom with a supplemental disclosure indicating—for the first time—that she was seeking "future special damages" for the "future costs of treatment to be incurred" in connection with shoulder surgery, estimated to be $73,500. This disclosure did not identify any documents or witnesses that would support the claim and stated that "the disclosure is based upon estimations and will be further detailed through expert discovery." Then, on February 22, 2022, the last day of fact discovery, De La Cruz requested a thirty-day discovery extension so that her expert could review the rule 35 report and Ekstrom's deposition transcript. The district court granted the extension request.

¶6     Two days before the end of the extended discovery period, De La Cruz filed a second supplemental disclosure claiming future special damages of $57,591. In support of her updated future special damages disclosure, De La Cruz filed an expert disclosure identifying both her medical expert and a life care planner as retained experts and provided their expert reports. Ekstrom filed a motion to exclude De La Cruz's future medical expense evidence, asserting that De La Cruz had failed to comply with her pretrial disclosure obligations. In response, De La Cruz argued that (1) her supplemental disclosures were timely and sufficient; (2) if the disclosures were untimely, any late disclosure

was harmless; and (3) she had good cause for any untimely disclosure.

¶7     After full briefing and oral argument, the district court ruled in favor of Ekstrom and found De La Cruz's supplemental disclosures to be untimely. The court noted that this case exemplifies

> precisely why the Rules require early disclosure of damages—a party necessarily litigates a case involving roughly $11,000 in past medical expenses plus pain and suffering materially differently than a case worth nearly $70,000 in special damages (plus pain and suffering), and reasonably so. . . . [A] party should not have to litigate a case twice.

¶8     In its ruling, the court also examined whether De La Cruz's untimely disclosures were harmless. The court determined that Ekstrom was harmed by De La Cruz's failure to identify any future medical expenses early because Ekstrom "created and executed on a discovery and litigation plan that included taking written and deposition discovery proportional to the amount at issue and retaining an expert who is board certified in physical medicine and rehabilitation, not an orthopedic surgeon." The court further concluded that De La Cruz had not shown good cause for the untimely disclosures, because it was her own delay in investigating her damages before filing her complaint that caused the problem:

> If a party intends to seek to recover damages that will require expert testimony, a party is required to do the investigation necessary in order to satisfy the requirement of rule 26 [of the Utah Rules of Civil Procedure], and such investigation might very well necessitate consulting with an expert early in the case.

The court therefore excluded De La Cruz's future damages-related evidence. De La Cruz appeals.

ISSUE AND STANDARD OF REVIEW

¶9    The issue in this case is whether the district court exceeded its discretion in excluding the evidence contained in De La Cruz's supplemental damage disclosures based on its determinations that those disclosures were not timely, that the late disclosure was not harmless, and that De La Cruz had not shown good cause for the delay.

¶10    "As a general rule, we grant district courts a great deal of deference in matters of discovery and review discovery orders for abuse of discretion." *Dahl v. Dahl*, 2015 UT 79, ¶ 63, 459 P.3d 276. In particular, we review for abuse of discretion district court rulings regarding timeliness, harmlessness, and good cause. *See Sleepy Holdings LLC v. Mountain West Title*, 2016 UT App 62, ¶ 24, 370 P.3d 963; *see also Supernova Media, Inc. v. Pia Anderson Dorius Reynard & Moss, LLC*, 2013 UT 7, ¶ 15, 297 P.3d 599 (reviewing a district court's timeliness determination for abuse of discretion).

¶11    Ultimately, as long as the court's decision "was within the broad range of discretion entrusted to" trial judges, even if "we think the trial judge made the wrong call" we will affirm because "it was, in its essence, a discretionary call." *Gunn Hill Dairy Props., LLC v. Los Angeles Dep't of Water & Power*, 2015 UT App 261, ¶ 24, 361 P.3d 703 (Orme, J., concurring), *cert. denied*, 369 P.3d 451 (Utah 2016). It matters not whether "one or more members of this panel might have handled the matter differently," *see Hansen v. Kurry Jensen Props. LLC*, 2021 UT App 54, ¶ 25, 493 P.3d 1131, but only whether the decision was "an abuse of discretion," and thus "we will reverse only if there is no reasonable basis for the district court's decision," *see Berger v. Ogden Reg'l Med. Center*, 2020 UT App 85, ¶ 15, 469 P.3d 1127 (quotation simplified), *cert. denied*, 474 P.3d 944 (Utah 2020).

ANALYSIS

¶12 The Utah Rules of Civil Procedure sets forth clearly defined directions for the discovery process. Rule 26(a)(1)(C) requires the plaintiff to serve on the other party, "without waiting for a discovery request, . . . a computation of any damages claimed and a copy of all discoverable documents or evidentiary material on which such computation is based." And rule 26(d)(3) further elaborates that a "party is not excused from making disclosures or responses because the party has not completed investigating the case."

¶13 Importantly, "[i]f a party fails to disclose or to supplement timely a disclosure or response to discovery, that party may not use the undisclosed witness, document, or material at any hearing or trial unless the failure is harmless or the party shows good cause for the failure." Utah. R. Civ. P. 26(d)(4). *See also Bodell Constr. Co. v. Robbins*, 2009 UT 52, ¶ 35, 215 P.3d 933. We discuss in turn the district court's determinations that De La Cruz's supplemental disclosures were untimely, that the late disclosure harmed Ekstrom, and that De La Cruz had no good cause for the belated disclosures.

I. Timeliness

¶14 Depending on the circumstances, a disclosure produced a few days before the close of fact discovery may still not be considered timely. That is, a district court retains broad discretion to determine whether a party has not had sufficient time to complete the investigation of its case or whether filing its future damage calculations near the end of the fact discovery period was strategically motivated. *See generally* Advisory Committee 2011 Amendments to Utah R. Civ. P. 26. "If factual contentions about the amount of damages require further investigation or discovery, the party must undertake that investigation as early in the litigation process as is practicable." *Sleepy Holdings LLC v.*

*Mountain West Title*, 2016 UT App 62, ¶ 14, 370 P.3d 963 (quotation simplified).

¶15 "Timeliness is determined under the facts and circumstances of each particular case, and in the sound discretion of the court." *Burr v. Koosharem Irrigation Co.*, 2017 UT App 123, ¶ 11, 402 P.3d 124 (quotation simplified), *cert. denied*, 406 P.3d 251 (Utah 2017). And in other circumstances it is assessed by using a number of factors, including "the length of time since the applicant knew of [her] interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances." *Kane County v. United States*, 928 F.3d 877, 890–91 (10th Cir. 2019) (quotation simplified). Notably, "delay in itself" does not render a request or disclosure untimely. *Id.* (quotation simplified). In general, a request of disclosure will be considered timely if the litigant "acted diligently once the basis for relief became available," and can show that any delay in seeking relief did not cause undue hardship to the opposing party." *Menzies v. Galetka*, 2006 UT 81, ¶ 65, 150 P.3d 480 (quotation simplified).[1]

¶16 Here, it is undisputed that De La Cruz did not disclose the fact of her future medical damages and the amount or method of calculating those damages until right before the close of fact discovery. But De La Cruz knew that her shoulder was still hurting in May 2021 at the time of her deposition, yet she opposed Ekstrom's request for a medical examination around that same time. De La Cruz also retained and was evaluated by her own

---

1. We acknowledge the cases we cite here address timeliness in contexts other than discovery disclosures. Compare Utah R. Civ. P. 24 (intervention), *and id.* R. 60 (relief from judgment or order), *with id.* R. 26 (general provisions governing disclosure and discovery). But we find the timeliness determinations in those other contexts analogous and the analysis persuasive.

medical expert by the end of January 2022, yet none of that information was disclosed until months later.

¶17 The district court opined that "[w]hile it [was] true that [De La Cruz's] supplemental disclosures were made a few days prior to the end of fact discovery, the Court [was] not persuaded that this renders the disclosure timely." In fact, the court noted that "[p]rior to the first supplemental disclosure in February 2022, [De La Cruz] *never* indicated that she was seeking damages for future medical expenses." Yet just "days before the end of fact discovery and then . . . days before the end of the 30-day extension," De La Cruz disclosed that she was seeking an additional "$57,591 in future medical expenses." The court determined that De La Cruz's "belated disclosure" of the computation of previously unsought future special damages was untimely because Ekstrom had already "retained an expert," conducted depositions, "and completed all other discovery . . . deemed necessary based on the damages previously claimed" by De La Cruz.

¶18 Under the circumstances, we do not perceive an abuse of discretion in the district court's determination that De La Cruz's disclosures were untimely. Here, the district court exercised its broad discretion to assess her disclosures of future special damages as untimely against the backdrop of the "[t]ime, place and manner requirements relating to discovery" in the case. *See Bennion v. Utah State Board of Oil, Gas & Mining*, 675 P.2d 1135, 1144 (Utah 1983). As such, we will not disturb the district court's ruling that De La Cruz's supplemental disclosures were untimely.

## II. Harmlessness

¶19 The district court found that De La Cruz's untimely disclosures harmed Ekstrom. This is based on the fact that, by the time De La Cruz disclosed her need for future medical care, Ekstrom had already "created and executed on a discovery and litigation plan that included taking written and deposition discovery proportional to the amount at issue"—which was at

that point approximately $11,000—"and retaining an expert who is board certified in physical medicine and rehabilitation, not an orthopedic surgeon." Likewise, Ekstrom "did not question" De La Cruz during her deposition "on any planned future medical expenses since none were disclosed," and she "did not subpoena other witnesses who might be able to offer personal observations on [De La Cruz's] physical condition," such as "supervisor(s) at her work." The district court determined that "without a specific damages claim relating to [future damages], it would be unreasonable to expect [Ekstrom] to retain an orthopedic surgeon, ask [De La Cruz] questions about this unasserted claim, or attempt to depose other witnesses on this topic." Moreover, "without an orthopedic surgeon expert, [Ekstrom would] be hampered in her ability to" "refute [De La Cruz's] specific damages claim." We perceive no abuse of discretion in this determination.

¶20 When contemplating the question of harmlessness, district courts should consider "whether the defense was able to adequately (1) question witnesses, (2) determine the case's tier status under the applicable rules of civil procedure, (3) understand the nature and quantity of the plaintiff's claimed damages, and (4) understand the scope and cost of the litigation pursued." *Chard v. Chard*, 2019 UT App 209, ¶ 45, 456 P.3d 776. For nearly the entirety of the fact discovery period, Ekstrom understood De La Cruz's damages claim to be around $11,000 and made decisions about how much discovery to conduct and what questions to ask based on that information. De La Cruz's belated damages disclosures increased her claimed damages sixfold. Importantly to the district court, Ekstrom did not have an opportunity during the fact discovery period to conduct discovery on De La Cruz's new damages claims, and in order to do so, Ekstrom would have had to "litigate [the] case twice," as—in the court's language—"a party necessarily litigates a case involving roughly $11,000 in past medical expenses plus pain and

suffering materially differently than a case worth nearly $70,000 in special damages (plus pain and suffering)."

¶21    As the district court provided adequate rationale for the determination that De La Cruz's belated disclosures were harmful, we see no abuse of discretion in the district court's decision.

## III. Good Cause

¶22    The district court disagreed with De La Cruz's assertion that there was good cause for her belated disclosures as she "did not know for certain about [her own] injuries until receiving the information found within her expert's reports." But even if this were the case, the court concluded that "such investigation might very well necessitate consulting with an expert early in the case." This is unlike what De La Cruz did when she "delay[ed] in seeking input on or investigation of any such [future damages] claim." *See, e.g.*, *Stichting Mayflower Mountain Fonds v. United Park City Mines Co.*, 2017 UT 42, ¶¶ 16, 49, 424 P.3d 72 (explaining that where a party had "waited so long to add [additional] claims and lacked a good explanation for the delay," these "new claims . . . were barred by" the trial court, and that our review of such a decision is "deferential"); *Gunn Hill Dairy Props., LLC v. Los Angeles Dep't of Water & Power*, 2015 UT App 261, ¶¶ 21, 24, 361 P.3d 703 (Orme, J., concurring) (emphasizing that "standards of review really do matter" and even where "we think the trial judge made the wrong call," it remains "a discretionary call" and so long as it is "within the broad range of discretion entrusted to [the judge]," we must affirm), *cert. denied*, 369 P.3d 451 (Utah 2016).

¶23    De La Cruz failed to persuade the district court that she had good cause to delay the disclosure that she was seeking special damages to cover her future medical expenses. And though some members of this panel may have made a different call, we find that the district court acted within its discretion when it determined that De La Cruz did not show good cause for the

belated supplemental disclosures. Accordingly, we affirm the district court's good-cause ruling.

CONCLUSION

¶24    The district court did not abuse its broad discretion when it determined that De La Cruz's supplemental disclosures were not timely, that her delayed disclosures were not harmless, and that she did not show good cause for the delayed disclosures. As such, we affirm the court's exclusion of De La Cruz's future special damages evidence as a proper sanction under rule 26(d)(4) of the Utah Rules of Civil Procedure.

———————

HARRIS, Judge (concurring):

¶25    As the lead opinion explains, district courts enjoy wide discretion in determining whether, under the circumstances presented in the case at hand, a party's disclosures are timely and—if deemed untimely—whether their tardiness is harmless or excused by good cause. I agree with my colleagues that the district court's determinations here were not outside the scope of its wide discretion.

¶26    But in my view, the court's rulings were harsh, and lie somewhere near the outer boundary of a district court's discretion in such matters. All three of the court's rulings—the ones regarding timeliness, harmlessness, and good cause—could easily have gone the other way. I write separately to encourage district courts to exercise their discretion, in close cases, in ways kinder and gentler than exercised here, and in ways aimed at resolution of matters on their merits.

I

¶27     Utah appellate courts have recently issued a number of decisions interpreting the discovery disclosure provisions of the Utah Rules of Civil Procedure. *See, e.g.*, *Keystone Ins. Agency, LLC v. Inside Ins., LLC*, 2019 UT 20, 445 P.3d 434; *Butler v. Mediaport Ent. Inc.*, 2022 UT App 37, 508 P.3d 619; *Segota v. Young 180 Co.*, 2020 UT App 105, 470 P.3d 479. In many of these cases—including our decision in this case—we have upheld district court orders that have sanctioned parties for nondisclosure or untimely disclosure, and sometimes these sanctions have been severe. *See Butler*, 2022 UT App 37, ¶ 57 (upholding a district court's order dismissing a party's damages claims due to inadequate damages disclosures). And we have often emphasized the applicable rule's strong language that, if a party fails to make a required disclosure, "that party may not use the undisclosed witness" or evidence at trial "unless the failure is harmless or the party shows good cause for the failure." *See* Utah R. Civ. P. 26(d)(4).

¶28     In the wake of these recent rulings, there has been some measure of grumbling, amongst lawyers and trial judges, that the disclosure rules have become a nest of traps for the unwary litigant; that defendants file motions alleging inadequate or untimely disclosures in nearly every case; and that too many cases are now being resolved by resort to non-merits discovery rulings rather than by resort to the legal principles governing the substantive causes of action at issue.

¶29     While there may be a kernel of truth to these complaints, I instead urge bench and bar to view these recent cases—which have, by and large, involved *affirmances* of district court rulings—simply as sustaining district court *discretion* in such matters, and not as an indication of any appellate-level preference for harshness. In the cases I have authored, I have endeavored to emphasize the discretionary standard of review governing discovery cases, noting in particular "that assessment of harm in this context is a nuanced matter, and that it is sometimes difficult

to tell if a defendant has really been harmed" by a late or inadequate disclosure or is, instead, "just feigning harm for the purposes of trying to get the plaintiff's damages claims dismissed on non-merits grounds prior to trial." *See Butler*, 2022 UT App 37, ¶ 48. District courts will "almost always have a better vantage point than we do to make such a call," and for this reason "we review a district court's harmlessness determination for abuse of discretion." *Id.* And in conducting review for abuse of discretion, the question is not whether we would have done the same thing had we been in the district court's shoes; rather, the question is whether the district court's chosen remedy constituted an abuse of its wide discretion in such matters. *See id.* (noting that the court's decision, "while perhaps not the only possible permissible decision under the circumstances, was not outside the bounds of the court's discretion"); *see also Segota*, 2020 UT App 105, ¶ 22 (affirming the court's order, even while acknowledging that "another judge might have determined that the defendants' harm could have been remedied in a different way").

¶30 Because of the lenient standard of review, district courts possess great power in making decisions regarding discovery, disclosures, and sanctions; those decisions are statistically quite likely to be affirmed on appeal. With great power, however, comes great responsibility. Our decisions giving voice to district court discretion will make sense, in the long run, only if district courts elect to exercise that discretion in ways commensurate with both justice and mercy.

¶31 Specifically, I encourage district courts, in close cases, to exercise their discretion in favor of hearing cases on their merits. In so doing, district courts should, in my view, explore creative solutions that appropriately penalize non-disclosing parties while still allowing claims to proceed to adjudication on their merits. *See Segota*, 2020 UT App 105, ¶ 22 (suggesting that the harm sustained by the defendant as a result of the plaintiff's nondisclosure "could have been remedied" in a way short of dismissal, such as "through an assessment of attorney fees and costs" against the

non-disclosing party "imposed in connection with an extension of" relevant deadlines).

¶32 In this same vein, I encourage attorneys to assist district courts in facilitating the judicious exercise of this discretion. In particular, attorneys should not neglect to make "harmlessness" or "good cause" arguments when appropriate, and in that context attorneys—especially the ones who made the substandard disclosures—should propose creative solutions that might serve to ameliorate the harm caused by the infirm disclosures while still allowing the relevant issues to move forward on their merits.

II

¶33 In this case, I agree with the lead opinion's conclusion that the district court's rulings were within the broad discretion afforded it in this context. But in my view, the court would have been well within its discretion had it come out a different way in its rulings regarding timeliness/good cause and harmlessness.

¶34 With regard to timeliness and good cause, it bears noting that De La Cruz's disclosure occurred before the end of the fact discovery period. Depending on the situation, it may not necessarily be dilatory for a party to disclose a new issue just a few days before the end of fact discovery. Sometimes, of course, waiting until the eve of the discovery cutoff to make a disclosure will result in a determination that the disclosure was untimely. *See, e.g.*, *Keystone*, 2019 UT 20, ¶ 19 (deeming a disclosure untimely that was made in "the twilight hours of fact discovery" (quotation simplified)). But other times, a litigant may discover new facts, for the first time, near the end of the fact discovery period that form the basis for a new claim or the expansion of an existing claim; in that situation, a party's attempt to inject new material into the case late in the fact discovery period may not be untimely. *See, e.g.*, *Evans v. B&E Pace Inv. LLC*, 2018 UT App 37, ¶¶ 22–24, 424 P.3d 963, *cert. denied*, 425 P.3d 803 (Utah 2018).

¶35    The timeliness/good cause question, in this case, came down to whether De La Cruz should have been more aware, at an earlier point in the process, of the possibility that she might need shoulder surgery. In situations like this, it is important to remember that personal injury cases are often dynamic and usually involve human beings in various stages of healing. A different district judge may have seen the matter differently and concluded that De La Cruz did not know until relatively late in the case, and should not reasonably have discovered any sooner, that she needed future shoulder surgery, a conclusion that in my view would have been within the court's discretion on these facts.

¶36    With regard to harmlessness, the court was concerned that allowing De La Cruz to inject the shoulder surgery issue into the case at a late stage would have required Ekstrom to "litigate [the] case twice." *See supra* ¶¶ 7, 20. I certainly acknowledge the validity of this concern; tardy disclosure does often necessitate repetition of various litigation activities, and such repetition adds to the cost of the litigation and can, in many cases, constitute real harm.

¶37    But in this case, much of the work that would have been necessitated by introduction of the shoulder issue into the case would not have been redundant. For instance, in its ruling the court noted that Ekstrom—from the beginning and due to the small amount of damages apparently at issue—made the decision not to "subpoena other witnesses who might be able to offer personal observations" about De La Cruz's physical condition, including De La Cruz's work colleagues, and implied that Ekstrom would be harmed by incurring the costs of that discovery after De La Cruz's belated disclosure. But Ekstrom would have had to do that work even if De La Cruz had disclosed a potential shoulder issue from the very beginning; discovery that does not have to be repeated ordinarily should not count in any tally of repetitive costs. In assessing harm, district courts must take care to base their decisions only on matters that were actually harmful—here, matters that really would have been redundant.

¶38    In this case, some matters would have had to have been repeated. Certainly, Ekstrom's expert would have needed to do a second rule 35 examination, and Ekstrom would have needed to re-depose De La Cruz. But Ekstrom doesn't identify any *other* redundant activities, and I wonder whether these two redundancies, standing alone, are enough to render the late disclosure truly harmful. These two activities could have been accomplished relatively quickly and would have necessitated only a short and targeted extension of the fact discovery deadline; such extensions are usually not, standing alone, prejudicial. And the court could easily have required De La Cruz, as a sanction for her less-than-timely disclosure, to shoulder the costs of these two activities. Such a resolution would have both (a) alleviated all harm that is apparent to me on these facts, as well as (b) allowed adjudication of De La Cruz's new claim on its merits. In my view, such a resolution would not only have been well within the court's discretion, but it would have been an ideal way to resolve the situation. Before closing the courthouse door entirely to a party's claim, courts should explore the possibility of imposing this sort of creative solution to any "harmfulness" problem created by a late or inadequate disclosure.

¶39    In sum, I concur in the resolution reached by the lead opinion, but I do so largely on the strength of the generous standard of review applicable here: district courts have wide discretion in these matters, and I agree with the lead opinion that the court's ruling here was within—although perhaps near the edges of—the boundaries of that discretion. But I urge district courts to exercise that discretion, in close cases, in aid of deciding cases on their merits, and I caution them to impose punitive rulings closing the courthouse door to litigants only when such rulings are truly deserved and only after exploring other less draconian ways, short of dismissal, of punishing the non-disclosing party.

———————